Mr. Justice SWAYNE
 

 delivered the opinion of the court.
 

 The question presented in the present case depends for its solution wholly upon the construction given to the fifth clause of the agreement of 1859, and the fourth section of the act of 1861. They are identical in effect as regards the point to be considered.
 

 The original takers of the preferred stock were creditors. They abandoned that position and became stockholders. They thereupon ceased to be the former, and can only be regarded as the latter. Thej surrendered their debts and received in return stock of the same amount, which gave them a chance for annual dividends of seven per cent., and a voice by voting in the choice of those by whom the affairs of the company were to be administered. What they were to receive was not interest, but dividends; and they were to receive them in priority to the holders of the common stock. The latter could receive nothing until the former were satisfied. The maximum payable on the preferred stock was specified. It might be less, or nothing. It could not be more. The amount subject to the limit prescribed depended wholly upon «the residue of the net earnings applicable in that way. The language employed is apt to express the relation of stockholders. None to express the relation of creditors is found in the instrument; and there is nothing from which the intent to eontiuue that relation any longer can be inferred. If the mortgages were foreclosed and there were a surplus left insufficient to satisfy the general creditors, it is quite clear that the holders of the preferred stock could have no right to share in the fund.
 

 The dividends were to be paid after the mortgage-interest and delayed coupons were paid in full.
 

 
 *148
 
 This clause was inserted doubtless out of abundant caution, to prevent the possibility of a claim being set up to the prejudice of the holders of the mortgage securities. Whether the restriction was necessary, for that purpose, we need not consider. The preferred dividends were to be paid out of “ the
 
 net earnings
 
 of the road.” The lexical definition of
 
 nei
 
 is “ clear of all charges and deductions.” — Webster. “ That which remains after.the deduction of all charges or outlay, as net profit.” — Worcester. The popular acceptation of the term is the same. There is no controversy between the parties on this subject. Such net earnings must have been earned in “ the current year.” There are these four specific limitations. There are no others. It is not said that the preferred dividends shall be paid
 
 next
 
 after the mortgage interest and delayed coupons, nor after, nor pro
 
 rata
 
 with anything else, nor before anything else except dividends upon the common stock. Beyond the four restrictions named, the matter is left to be regulated wholly by the principles of law and the discretion of the company. Suppose in this case the holders of coupons of the sterling bonds and the holders of preferred stock claimed payment at the same time and the fund was insufficient to meet both demands, can it be doubted that the rights of the creditor would be held paramount to those of the shareholder, and that the interest must be fully satisfied before a dividend could be paid ? The plainest principles of reason and justice as well as the law would require this result. A question is raised as to the source to which the phrase “.net earnings of the road” refers. The term
 
 road
 
 is used as an appellative, and was clearly intended to include the principal road and all its adjuncts. The complainant insists that the
 
 “net
 
 earnings” must be the
 
 net earnings
 
 of things as they were when the preferred stock was issued. We find nothing in the case, express or implied, to warrant this view. At the time referred to, the company held certain leases. If it was deemed best, and was found practicable, could not the company have rid itself of them ? If the complainant’s view be correct, this could not be done, at any rate not without the
 
 *149
 
 consent of the preferred stockholders. So if the company deemed it proper to take leases of other roads, in addition to those previously held, or in place of them, what was there to prevent it? Upon what ground can it be claimed that the category “ net earnings of the road ” was not intended to embrace the net earnings of all the business of the company for the time being, whether done upon one or many roads ?
 

 There is nothing in the agreement or the statute, and we are aware of no legal principle which would authorize the. stockholders in question to analyze the business, select out a part of it, and to say that the
 
 net earnings
 
 specified must be a predicate of that part, and of none other. The company had the right to conduct its operations, in good faith, as it might see fit; and it was from them and all of them that the materials for the computations of earnings were to be derived.
 

 The only qualification prescribed in this connection is not as to the scope, means, or elements of the business, but is one in point of time. The net earnings from which the preferred dividends were to be paid must have been earned “in the current year.” Whether the business of such year were large or small, or of what it consisted, is immaterial. The corporation never agreed to be limited in the exercise of its faculties and franchises, and the complainant must abide the result. If errors were committed, and a loss ensued, a court of equity cannot relieve him. It is one of the chances of the enterprise in which he embarked.
 

 The business of the road was a unit. If it had been disintegrated as proposed by the complainant, we apprehend it would have been found that the correlations of the main stem and the branches were such, and that the expenses and charges incident to the entire business and those of the several parts were so interwoven and blended, that an accurate ascertainment of the net profit of the main line and any of the auxiliaries, taken separately from the rest, would have been impracticable. An ancillary road may be short and yield but little income, yet by reason of its reaching to coal
 
 *150
 
 fields, or from other local causes, its contributions to other roads of the series may be very large and profitable. Whether in this case the partial computation insisted upon could or could not have been made, the process was one upon which the company was neither bound nor had the right to enter.
 

 We hold that the computation by the company for the year 1868 was made upon the proper basis, and that the complainant is concluded by it. We are of the opinion that the rents for that year, accruing under leases taken by the company after the issuing of the preferred stock, and the interest upon the sterling bonds for that year were properly paid, and that there were no net earnings earned in that year which could be properly applied in payment of preferred dividends. These views are fatal to the complainant’s case. We have carefully examined all the authorities referred to by his learned counsel. None of them are in hostility to the conclusions at which we have arrived.
 

 Decree affirmed.