NATIONAL ELECTRIC SIGNALING CO. et al. v. FESSENDEN.

(Circuit Court of Appeals, First Circuit.  August 22, 1913.  Rehearing Denied
October 20, 1913.)

No. 999.

**1.** CORPORATIONS (§ 187*)—AGREEMENTS BETWEEN STOCKHOLDERS—CONSTRUC-
TION.

Plaintiff and W. transferred certain patents, etc., to a corporation in
exchange for all of its stock.  They subsequently transferred a majority
of the stock under an agreement that they should be paid therefor $300,-
000 out of the profits of the company before any dividends should be de-
clared.  The majority stockholders had advanced large sums of money to
the corporation, for which they held interest-bearing notes, and plaintiff
became dissatisfied because the amount due him did not also bear inter-
est.  One of the majority stockholders, who was also a director, prepared
an agreement stating that plaintiff demanded that the $300,000 be put on
an equal basis to that advanced on the notes, that he agreed to that
proposition and thought the best way to do this was by the issue of 6
per cent. preferred stock, to be repurchased by the company out of sur-
plus as accumulated, that plaintiff was to receive a specified salary, that
the majority stockholders would make other advances as needed, that
all questions of policy in the company as to which differences might arise
between the majority and a minority should be submitted to arbitration,
and that the provision for issuing preferred stock should include all
money payable by the company under its contracts.  This agreement was
signed by such majority stockholder and by plaintiff.  *Held*, that this did
not constitute an agreement by the corporation to assume an indebtedness
to plaintiff of $300,000 or to put plaintiff's claim on an equal basis with
the promissory notes, leaving the way of doing this open, but was an agree-
ment between the stockholders to equalize their claims by advancing the
claim of plaintiff and W. to the form of interest-bearing stock; the ma-
jority stockholders to waive their position as creditors by exchanging their
notes for preferred stock, especially as the corporation could not require
the majority stockholders to accept stock in exchange for the notes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 702, 703;
Dec. Dig. § 187.*]

**2.** CORPORATIONS (§ 174*)—STOCKHOLDERS—RELATION TO CORPORATION.

Holders of preferred stock of a corporation are not creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652;
Dec. Dig. § 174.*]

**3.** CONTRACTS (§ 47*)—CONSIDERATION—NECESSITY.

Where the owners of all the stock of a corporation transferred a ma-
jority thereof under an agreement that they should be paid therefor out
of the profits of the company before any dividends should be declared, the
corporation, not being indebted to the sellers of the stock, could not as-
sume the payment of the debt due them without a consideration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 220, 221, 256–
258;  Dec. Dig. § 47.*]

**4.** CONTRACTS (§ 75*) — CONSIDERATION — SUFFICIENCY — ASSUMPTION OF LIA-
BILITY.

Plaintiff and another, owning all the stock of a corporation, transferred
a majority under an agreement that they should be paid therefor out of
the profits of the company before any dividends should be declared.  The
purchasers of this stock had advanced large sums of money to the cor-
poration, for which they held interest-bearing notes.  Plaintiff becoming
dissatisfied because the amount due him did not also bear interest, an

agreement was made between him and one of the majority stockholders to equalize his claim and those of the majority stockholders, the agreement providing that the best way to do this was by issuing preferred stock. In consideration of this agreement, plaintiff, who had been in the company's employ, agreed to remain with the company. . It was plaintiff's contention that the agreement was merely one to equalize the claims, leaving the way of doing this open, and that the company subsequently assumed the payment of the amount due him with interest. *Held* that, plaintiff having agreed to remain with the company in consideration of the agreement with the majority stockholder, his agreement to remain in the company's service was not a sufficient consideration for the corporation's alleged promise to assume the debt due him.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 273–285; Dec. Dig. § 75.*]

5. CONTRACTS (§ 330*)—ACTIONS—PARTIES.

Plaintiff and W. transferred certain patents, etc., to a corporation in exchange for all of its stock, and subsequently transferred a majority of the stock under an agreement that they should be paid therefor $300,-000 out of the profits of the company before any dividends should be declared. The purchasers of this stock had advanced large sums of money to the corporation, for which they held interest-bearing notes, and plaintiff became dissatisfied because the amount due him did not bear interest. An agreement was made between him and one of the majority stockholders to equalize these claims by exchanging them for preferred stock, to be repurchased by the company out of surplus as accumulated; the contract further providing that plaintiff was to be employed at a specified salary, that the majority stockholders were to make further advances if required, that all differences in the management of the company, arising between the majority and a minority, should be arbitrated, and that the provision for issuing preferred stock was to include all money payable by the company under its contracts, with accrued interest. *Held* that, assuming that W. assented to this agreement, he did not thereby surrender his right in the $300,000, and the contract did not change the ownership of that right to a sole right in plaintiff; and hence the contract could be enforced only by plaintiff and W. jointly.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1589, 1591–1594, 1596, 1597, 1602–1604; Dec. Dig. § 330.*]

6. CONTRACTS (§ 9*)—ESSENTIALS—MEETING OF MINDS.

Plaintiff and W. transferred certain patents, etc., to a corporation in exchange for all of its stock. They subsequently transferred a majority of the stock under an agreement that they should be paid therefor $300,-000 out of the profits of the company before any dividends should be declared. The majority stockholders had advanced large sums of money to the corporation, for which they held interest-bearing notes, and plaintiff became dissatisfied because the amount due him did not also bear interest. One of the majority stockholders, who was also a director, prepared an agreement stating that plaintiff demanded that the $300,000 be put on an equal basis to that advanced on the notes, that he agreed to that proposition and thought the best way to do this was by the issue of 6 per cent. preferred stock, to be repurchased by the company out of surplus as accumulated, that plaintiff was to receive a specified salary, that the majority stockholders would make other advances as needed, that all questions of policy in the company as to which differences might arise between the majority and a minority should be submitted to arbitration, and that the provision for issuing preferred stock should include all money payable by the company under its contracts. This agreement was signed by such majority stockholder and by plaintiff. Plaintiff contended that the agreement merely provided for equalizing claims, leaving the manner of doing it open. *Held* that, if the agreement was not a completed contract to equalize the claims by exchanging them for preferred stock, it

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was no contract whatever, since, it being left uncertain whether the majority stockholders should surrender their claims or whether the corporation should assume a new indebtedness to plaintiff and W., the minds of the parties had not met.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 10–20; Dec. Dig. § 9.*]

Aldrich, District Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Action by Reginald A. Fessenden against the National Electric Signaling Company and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Charles F. Choate, Jr., and John L. Hall, both of Boston, Mass. (John W. Worthington, of Boston, Mass., on the brief), for plaintiffs in error.

Walter I. Badger and Browne & Woodworth, all of Boston, Mass. (Alex. P. Browne, William H. Hitchcock, and George K. Woodworth, all of Boston, Mass., on the brief), for defendant in error.

Before ALDRICH, BROWN, and HALE, District Judges.

BROWN, District Judge. This is a writ of error for review of the rulings of the District Court in an action of contract wherein a verdict was had by Fessenden, the plaintiff below, in the sum of $406,175.

The pleadings in the case are of a most extraordinary character, and are full of irrelevant allegations. Under such pleadings confusion of issues was to be expected.

[1] The declaration charges that Fessenden and the company entered into a contract. This contract is referred to as the contract of September 2, 1908, evidenced by an instrument in writing marked "Exhibit C."

To understand Exhibit C, which refers to a previous contract, it is necessary to consider certain facts that preceded it. For the purposes of this writ of error we may take from the brief of the defendant in error, Fessenden, the following statement:

"The plaintiff is an electrical engineer. Since 1896 he has paid particular attention to wireless telegraphy. In 1902 he had invented and developed his system so that it was a complete working system. Together with one Darwin S. Wolcott he then owned numerous patents and inventions covering this system and the apparatus used in connection with it. The defendant was incorporated under the laws of New Jersey on November 5, 1902. Its main office is at Pittsburg, Pa., which is also the residence and place of business of the parties in interest other than the plaintiff.

"On November 29, 1902, Fessenden and Wolcott entered into a contract with Thomas H. Given and Hay Walker, Jr. (Exhibit A, Rec., p. 15), by which it was agreed that Fessenden and Wolcott should transfer their wireless patents and inventions and any further inventions in that field to the defendant; that all the stock of the defendant should be issued to Fessenden and Wolcott; that they should thereupon transfer it to one Reed upon the following trusts:

"(a) Given and Walker to advance not more than $30,000 to be used in demonstrating the system.

"(b) If the tests proved satisfactory Given and Walker to have an option for nine months to purchase 55 per cent. of the stock of the company for $300,000.

"(c) In case this option is not exercised Fessenden and Wolcott to return the advances made or to deliver 10 per cent. of the stock of the company. The trust is then to terminate."

The remainder of the agreement is immaterial.

"The patents were duly assigned to the defendant and the stock issued and transferred to the trustee according to this agreement. Subsequent patents have also been assigned.

"On November 2, 1903, Fessenden and Wolcott entered into an agreement with Given and Walker (Exhibit B, Rec., p. 19) modifying the previous agreement, Exhibit A. This provided that a further sum of $30,000 was to be advanced by Given and Walker to the defendant and that before any dividends should be declared by the defendant the following payments should be made by it out of its earnings:

"(1) $10,000 and interest to Fessenden in repayment of a loan.

"(2) $30,000 and interest to Given and Walker in repayment of the amount advanced under this agreement.

"(3) $300,000 to Fessenden and Wolcott in place of the payment under the option provided in the previous agreement."

This agreement also canceled the option on 55 per cent. of the stock held by Given and Walker and provided that this stock should at once become their property, but that it should be held by the trustee until the foregoing payments had been made.

"On November 9, 1903, Walker, Given, Wolcott, Fessenden and Martin were elected directors of the defendant and they have continued such during all events in question."

At the execution of Exhibit C, Walker and Given were joint owners of a majority of the stock of the corporation, 55 per cent. or 60 per cent. of all the shares. For the purposes of this case it is unnecessary to decide whether it was 55 or 60 per cent.

Walker and Given had advanced a large sum of money ($728,000), for which they held demand promissory notes of the corporation, bearing interest at 6 per cent.

Fessenden and Wolcott were owners of a minority of the stock, 40 per cent. or 45 per cent., and, under the contract Exhibit B, were jointly entitled to be paid out of the earnings of the company, before any dividends should be declared, the sum of $300,000. In other words, Walker and Given were creditors of the corporation for moneys advanced to the corporation to the amount of $728,000, with interest, while Fessenden and Wolcott were not creditors of the company and had no claims except upon the earnings of the company. Their right to receive $300,000 from the earnings of the company arose from contract with the other stockholders, and not from contract with the defendant corporation.

Fessenden was then receiving a salary of $300 per month and had become dissatisfied because the sum of $300,000 was not bearing interest, and for other reasons, and, as he testifies, had a talk with Walker and Given in July or about the first of August, 1908, and asked them to put the $300,000 on the same basis as theirs as regarded interest, which they declined to do. On September 11th he had an inter-

view with Walker, and told him that he was dissatisfied and was going to leave the company unless they would put his $300,000 on the same basis as the money they had advanced. This was refused. There were threats of an application for a receivership and communications through Firth, a third party.

On September 12, 1908, Firth had an interview with Walker and later returned with Walker, who, in conversation with the plaintiff, "said he understood from Firth that plaintiff was willing to accept the proposition which he (Walker) had made him, and that plaintiff told him yes"; that plaintiff "suggested that we get a lawyer," and Mr. Walker or Colonel Firth said. "Don't let us have a lawyer in on this; let us just draw up the agreement; let it be a gentlemen's agreement," etc.; that Walker wrote the agreement and the plaintiff and Walker signed it. The agreement is as follows:

### Exhibit C.

"Col. John Firth,
        "Fort Pitt Hotel, Pittsburgh.

"Dear Sir: After considering the demands of Prof. Fessenden in regard to the National Electric Signaling Co. which I understand in a general way to be (1) that the $330,000 that under our contract is a deferred payment without interest, to be paid out of the first profits, be put upon an equal basis to the money advanced on promissory notes by Mr. Given and myself—I will agree to this proposition to date from the time the Fruit Co. contract was signed and think the best way to do this is by the issue of 6 per cent. per annum preferred stock as of that date.

"Whenever the company accumulates a surplus of $100,000, cash in bank, then immediately they are to appropriate all such balance over a working balance of $50,000 to the purchase of preferred stock in pro rata proportion among the holders thereof.

"(2) Hereafter or say from September first Prof. Fessenden to receive a salary of $600 per month.

"(3) Messrs. Given and Walker to advance from time to time if it should be needed a farther sum of money up to $50,000 to construct stations under contract and provide funds for the running expenses of the company, they to receive notes for said advances bearing interest at 6 per cent. said notes to be paid out of the first receipts of money received on account of various contracts.

"(4) It is further agreed that all questions of policy in the company or all questions as to the erection of new stations or all questions of licensing subsidiary companies or all questions of patent suits shall be voted upon by the stockholders according to their holdings and should any difference arise between the majority and a minority amounting to 25 per cent. of the stock then the question shall be referred to an arbitrator and it is hereby agreed that the present arbitrator shall be Col. John Firth but either side can ask a new arbitrator at any time to be appointed by both sides in the usual way.

"It is also understood that any or all questions that may arise in the company shall be covered by this arbitration clause.

"Sept. 12, 1908.                                        Hay Walker, Jr.
                    "Accepted: Reginald A. Fessenden.

"Witness to both signatures,
        "John Firth.

"It is understood that the clauses above providing for the issue of preferred stock for the debts and other obligations of the company is to include all money payable by the company under its contracts with accrued interest on such obligations as call for interest.                    Hay Walker, Jr.
                                        "R. A. Fessenden."

It is very clear that Exhibit C does not disclose an agreement by the corporation to assume a debt to Fessenden of $330,000.

It is also very clear that it does not disclose an agreement by the corporation to put a claim of Fessenden for $330,000 upon the basis of promissory notes.

The persons signing the agreement were officers of the corporation, and were interested in the stock.

Aside from any question whether Walker had authority to act for Given, who was jointly interested with him as owners of a majority of the stock, and from any question whether Fessenden was authorized to act for Wolcott, we find that the intention of the parties who signed the document is clearly expressed. The company is to issue preferred stock and to repurchase it from surplus earnings, and to employ Fessenden at $600 per month. It is thus to be relieved of indebtedness to the amount of $728,000. It is to issue preferred stock to Walker and Given, and to Fessenden and Wolcott, thereby making Walker and Given preferred stockholders instead of creditors.

Fessenden and Wolcott's claim is not advanced to a debt, but is to be changed to the form of interest-bearing stock.

In the form of preferred stock it is still to be payable only out of earnings, but is to bear interest.

Walker and Given are to exchange their promissory notes for preferred stock, thus waiving their position as creditors.

Thus it is plain that it is not the corporation which is to put the parties upon an equality, but Walker and Given, by waiving their claims as creditors and becoming preferred stockholders. This, of course, the corporation could not do, for the simple reason that a debtor has no power to cancel his debts.

Walker and Given are also to advance additional moneys to the corporation.

The equalizing of the claims is to be through the act of Walker and Given, and the issue of preferred stock to Fessenden and Wolcott is but a matter of form, so far as the principal sum of $300,000 is concerned. The corporation is to change substantially its relation to Fessenden and Wolcott only by giving interest on $300,000 which previously did not bear interest. The agreement for arbitration between stockholders is, of course, not an agreement to which the corporation could be a party.

The plaintiff's contention that the company agreed in general terms to put $300,000, to be paid out of first profits, upon an equal basis to money advanced on promissory notes, and that the way of doing this was left open, is clearly fallacious and unsound, and by signing Exhibit C Fessenden is estopped from such a contention. This argument violates the elementary rule of construction, that the intention of the parties must be gathered from the whole instrument, and should it be accepted would only lead to making the contract void for uncertainty, since until the parties had agreed as to the manner of equalizing the debts the proposed obligations of the corporation were wholly indefinite, and might vary between being discharged of a debt

of $728,000 and assuming a new debt of $300,000. There is a proposal of a specific way of doing this accepted by Fessenden, by signing both the body of the agreement and the supplemental agreement. The proposal was from the persons (assuming Given's consent) who alone could accomplish it in this way.

The acceptance of a proposal to do it in this way, i. e., by the issuing of preferred stock for outstanding debts, is absolutely inconsistent with the theory of a contract with the corporation to equalize the debts.

It may clear the discussion of this case to point out again two things which are substantially different in character, and which, far from being two methods of doing the same thing, are essentially different things, which cannot be done by the same person.

[2] 1. The surrender by creditors of a corporation of its interest-bearing notes to the amount of $728,000, more or less, and the receipt in lieu thereof of preferred stock with interest at 6 per cent. By such an arrangement the noteholders cease to be creditors of the corporation, and must look to profits for dividends on their stock. It is well settled that holders of preferred stock are not creditors. St. John v. Erie R. R. Co., 22 Wall. 136, 147, 22 L. Ed. 743; Warren v. King, 108 U. S. 389, 398, 399, 2 Sup. Ct. 789, 27 L. Ed. 769; New York, etc., Ry. v. Nichals, 119 U. S. 296, 305, 308, 7 Sup. Ct. 209, 30 L. Ed. 363. Such a mode of equalizing claims is merely a stockholders' agreement. Spencer v. Smith (C. C. A.) 201 Fed. 647.

The corporation has no power to surrender, or to agree to surrender, the creditors' notes, and if it assents to such an arrangement does not assume a debt, but merely agrees that a debt may be lifted from its shoulders, and that it will distribute profits as the stockholders entitled to them may direct.

[3] 2. An agreement by a corporation to assume as a debt the sum of $300,000 which, by agreement of stockholders, was to be paid to two of them out of profits before the declaration of a general dividend to stockholders, converts what is not a debt into a debt. A corporation, of course, has no power to assume such a debt without consideration, and there is in this case, as we shall point out, no evidence whatever of any consideration for a promise by the corporation to add $300,000 to its indebtedness.

The difference between these two arrangements is the difference between discharging $728,000 of debts owed and the taking on of $300,000 of debts not owed; the difference to the corporation in result is about a million dollars.

[4] The defendant denies that there was any consideration for a promise by the corporation to assume the debt of $300,000.

The plaintiff sets up as the consideration an agreement by Fessenden to remain with the company. The plaintiff testified, however, that when the rough draft of Exhibit C was presented to him he said:

"Yes; if that is signed, I will agree to stay on with the company, and to tell Mr. Wolcott to drop the receivership proceedings, and that will be entirely satisfactory to me."

According to this, the oral agreement to continue with the company was in consideration of what was contained in Exhibit C. This was merely Walker's agreement, or at best Walker and Given's, to equalize the debts, for the reason that no one other than Walker or Given could do it in this way.

The plaintiff's contention that the consideration for the corporation's promise to assume a new debt of $300,000 was his agreement with the company to remain in its service is not only highly artificial, but is entirely inconsistent with Fessenden's testimony that he orally agreed to remain in consideration of the signing of Exhibit C. Upon the construction of that contract most favorable to the plaintiff it was not intended that the company should pay him $300,000, but only that the corporation should issue to him and to Wolcott preferred stock to be repurchased by the company out of earnings.

As a matter of construction, however, Exhibit C is clearly not an agreement in general to equalize the debts, either by corporate action or by individual action. The proposition to equalize is qualified by what follows, and is a proposition to equalize in a specific way, and, if we disregard the provisions for the issue of preferred stock as matter of form, the substance of the proposition is that Fessenden's and Wolcott's $300,000 shall still be payable out of earnings and that the debts to Walker and Given shall be put on the same basis.

There is nothing in Exhibit C which amounts to an agreement that Fessenden and Wolcott's right to profits shall be transformed into a debt of the corporation, either to Fessenden alone or to Fessenden and Wolcott jointly.

Furthermore, if it be assumed that Exhibit C was ratified by both Given and Wolcott, either as individuals or as officers of the corporation, this did not change its character.

We are, therefore, of the opinion that the trial court was in error in submitting to the jury the question whether Walker and Fessenden intended paper "C" as a present agreement then binding the corporation, that the corporation should stand liable to Fessenden for $330,000 and also in instructing them as follows:

"Now, in my judgment, gentlemen, it is for you to say what the purpose of that paper was on the question whether it bound the corporation or not."

As we are of the opinion that both in substance and in form the agreement to equalize the claims was not a corporate agreement, it becomes unnecessary to consider the question of Walker's authority to act for the corporation. The jury should have been instructed that Exhibit C did not bind the corporation to pay Fessenden the amount claimed as a debt.

[5] We are also of the opinion that the court erred in refusing a request for instruction that as Wolcott was jointly interested in the sum of $300,000 any claim for enforcement could be made only by Wolcott and the plaintiff jointly.

There remains for consideration the argument that after the execution of Exhibit C Wolcott adopted or accepted it as an agreement that the company should stand indebted to Fessenden alone. There is not

a word in the contract which indicates an intent to change the owner-ship of the right under Exhibit B to a sole right in Fessenden. The contract deals with what belongs to Wolcott as well as to Fessenden. It recognizes an existing right to profits, and simply seeks to change its form and to add interest.

Assuming that the jury might have found that Wolcott assented to Exhibit C, he did not thereby cancel or surrender to Fessenden his right under Exhibit B. The contract will not support such a conten-tion. It is expressly in evidence that Wolcott assented to nothing of that kind.

We may add a word to what we have already pointed out as to the error of the plaintiff's contention that Exhibit C was a general agree-ment by the corporation to equalize the claims and that the mode of doing so was left open.

This is based principally upon the expression in the agreement Ex-hibit C, "and think the best way to do this is by the issue of six per cent. per annum preferred stock." This expression was, of course, Walker's, and not the corporation's, and is followed by distinct and definite paragraphs, and by an addendum, and Fessenden's acceptance is of what is proposed by Walker as the best way, and which, by his signature, becomes the specified and agreed way, and the only way to which the signers are bound. To construe this expression as an official corporate utterance would involve the assumption that to the corporation the question whether it should be released from $728,000 debts or take on $300,000 more debts, was a mere question of what was the best way for the corporation to meet Mr. Fessenden's demands.

Granting for the argument's sake that Walker was acting as agent for the corporation as to any part of the contract contained in Exhibit C, there was then no question of a best way. The corporation could not exercise a choice between retiring the debts of Given and Walker and assuming a new debt. It had no such choice. It had only the power to assume a debt, and this for a consideration.

[6] The plaintiff's contention that the way or method by which the debts were to be equalized was left open is destructive of his conten-tion that a contract was completed, for so long as it was left uncertain whether Walker and Given should surrender their claims, or the cor-poration assume a new debt, the minds of the parties had not met. Until it was agreed which person was to do the act which equalized the claims, whether the corporation should take on a new debt or Walker and Given surrender a debt, there could be no contract. Walk-er, perhaps, had a choice whether he would act upon his own rights as a creditor or upon his rights as an officer of the corporation; but until he had made this choice, and so long as Fessenden left him this choice, there could be no contract, since it would be left wholly un-certain whether the corporation should take on merely a new obliga-tion to pay interest on $300,000, or a new debt of $300,000.

The only theory, then, by which Exhibit C, upon which plaintiff sues, can be regarded as a completed contract of the corporation, is that its full obligation is set forth in Exhibit C. This is to pay Fes-senden $600 per month, which it has done, and to issue 6 per cent.

preferred stock, which it has not done. Here, if anywhere, is the only obligation of the corporation, contemplated under Exhibit C that is still unperformed; and this was not sued upon, and is not before us.

The plaintiff relies, however, upon certain evidence to show that the corporation entered his claim upon its books as a debt. This evidence is most uncertain and equivocal, but is quite as consistent with an intention to carry out the provision of Exhibit C to pay interest as with an intention to convert a claim payable out of profits into a debt immediately payable.

Aside from the fact that no such subsequent contract is declared upon, and in view of the fact that Fessenden's remaining with the company was in consideration of the execution of 'Exhibit C, it is clear upon the present record that there was no additional consideration which could support a new contract to do more than the corporation was to do under the provisions of Exhibit C.

Furthermore, all evidence of ratification by Wolcott is confined to Exhibit C, and it expressly appears in Fessenden's testimony that he had not seen nor communicated with Wolcott subsequent to Wolcott's supposed ratification of Exhibit C.

We think that the sixteenth, seventeenth, nineteenth, twenty-third, twenty-fourth, and twenty-sixth assignments of error are well taken, and that it is not necessary for us to consider specifically the other assignments of error.

It may be said of the case generally that the rights of Fessenden and Wolcott are really based upon their transfer of a majority of the stock of the corporation to Walker and Given, and not upon any transfer of property to the corporation. The corporation was at no time before the execution of Exhibit C indebted to Fessenden and Wolcott.

The plaintiff's brief urges that this is a mere verbal pretense, but it is evident that the parties to Exhibits A and B well understood that after Fessenden and Wolcott had transferred the patents to the corporation, and had taken all its stock, they were to receive their profits as stockholders and from the sale or transfer of stock. The contention that the company should now pay Fessenden for the patents, etc., and that a debt therefor should be created which cuts under the value of the stock, is wholly inconsistent with the plan that the patents, etc., should be transformed into the form of stock which Fessenden and Wolcott should own, hold, or dispose of upon such terms as were acceptable to them. Having issued its stock for these patents, there could be no consideration for any further promise to pay Fessenden for the patents. He could not claim both stock and payment for what he contributed to the stock. This is not reasonable.

At the oral argument it was suggested that the conduct of Walker and Given had been unfair or at least oppressive to the plaintiff. We fail to find in this record anything that gives support to such a criticism. They invested large sums in the enterprise, beyond the requirements of their contracts. If Fessenden contributed his inventions, they contributed a very large amount of capital at the risk of the business. It was not unreasonable that Fessenden, who drew a substantial salary, should, like Walker and Given, look to the profits of the

enterprise. This was clearly the intention of the parties, as expressed in Exhibits A and B, and we thin.·· it is equally expressed in Exhibit C, upon which the present suit is founded.

The verdict of the jury is clearly inconsistent with this. intention of the parties, and leads to the absurd result that the corporation is charged with a debt for the shares which Fessenden and Wolcott as stockholders had transferred to Walker and Given.

The judgment of the District Court is reversed, and the case is remanded to the District Court for further proceedings consistent with this opinion; and the plaintiffs in error recover costs in this court.

ALDRICH, District Judge (dissenting). In this case it is unmistakable and beyond question—indeed it is conceded—that the interested parties intended and sought through a written agreement to establish an equality between certain creditors of the corporation; and under the agreement of September 12, 1908, it was provided that Fessenden's $330,000, which, as recited, stood under a former agreement as a deferred payment, ·without interest, be put upon an equal basis with the money advanced by Mr. Given and Mr. Walker, for which they held promissory notes payable on demand, with .interest.

That putting the claims of the three parties against the corporation upon an equal basis was the sole or paramount idea underlying the agreement of September 12, 1908, is a thing established. This being so, the rule of liberal construction applies, because the law seeks for all reasonable ways in which to establish and furnish a remedy for carrying out what parties intended. It is true the agreement was signed by Walker and Fessenden only, but it was signed by them as an agreement which should furnish a basis for going along with the corporate enterprise, and it had reference to the internal affairs of the corporate business, and in no sense contemplated anything ultra vires.

Questions of authority, the question of consideration, questions of ratification on the part of the corporation, and all parties interested, were comprehensively submitted to the jury under proper instructions.

The action is in contract, and Mr. Fessenden seeks to recover an undisputed amount, with interest, based upon what he was to receive for his patents and for incidental expenses in the field of wireless telegraphy.

The point is taken that Fessenden can have no recovery because the contract contemplated satisfaction of the claim through issuing preferred stock. The grievance back of Mr. Fessenden's insistence that his claim should be placed upon an equal basis with that of Given and Walker was that Given and Walker held demand notes, with interest, while his claim was not founded upon notes, and was without interest. Fessenden's relation to the corporate situation was based upon consideration of the assignment of inventions and patents, and the value was fixed, while that of Given and Walker was based upon money advances. and that amount was fixed. In this respect the one consideration is as potent as the other.

It must always be borne in mind that in the broad sense, if not in the technical sense, the corporation was indebted to Fessenden from

the moment of his assignments—indebted to him for the rights which he surrendered, as well as to Given and Walker for their money advances. It is quite true that the original agreement contemplated payments to Fessenden out of profits, but this was changed, and the consideration for changing or advancing Fessenden's claim to an interest-bearing debt was the recognition of the fact that it should be placed upon a basis like that of Given and Walker's, and upon the further consideration of certain engagements on the part of Fessenden which were of important benefit to the corporation. Under any reasonable construction of the agreement of September 12, 1908, it is certain that the purpose was to equalize the claims of Given and Walker and that of Fessenden. There is nothing in any of the agreements or in the record which reasonably warrants the conclusion that Given and Walker waived or surrendered their attitude of indebtedness, while the evidence tended to show, and the verdict must have been based upon the grounds, that the relations of the parties were equalized by advancing Fessenden's claim to an interest-bearing debt. In the event of the recovery of Fessenden's indebtedness, his right to stock and his right to receive payments from profits would be merged in the judgment based upon recoverable indebtedness created by the scheme for equalizing these claims against the corporation.

Under the contract, or agreement, known as Exhibit C, dated September 12, 1908, entered into with a view to carrying out the intentions of the parties as to placing them upon an equal footing, the provision in respect to preferred stock, under reasonable construction, should only be accepted as an expression by the parties that that was the preferable way of carrying out the contract, or, in other words, quoting from the contract, Mr. Walker says, speaking for himself: "I * * * think the best way to do this is by an issue of six per cent. per annum preferred stock of that date," referring to the contract with the Fruit Company. The paragraph which follows this expression as to the preferable way and the short addendum, having reference to preferred stock, as well, in view of the terms of the double aspects of the contract and the subsequent acts of the parties with reference to the transaction, should be accepted as provisional, and as describing what should happen in case the parties adhered to the scheme of issuing preferred stock as the best way of placing their interests upon an equal basis.

But the parties holding these claims, and the corporation, saw fit not to adhere to what in this agreement of double aspects was suggested as the best way, but devised another and what subsequently seemed a better way for effectuating the original purpose, and that was to establish the claim of Mr. Fessenden for his $330,000 and the claims for the money advanced by Mr. Given and Mr. Walker for which they held notes, on the books of the company as indebtedness, under corporate action which contemplated that interest should be charged up every half year. One of the reasons for this, as expressed by Mr. Walker, according to the testimony of Mr. Fessenden, was that, while the scheme of satisfaction through preferred stock was at first thought the best one, yet it was subsequently thought that by dealing with the

claims as corporate book indebtedness they could avoid the payment of taxes on nearly a million dollars. It was this act of the corporation, acquiesced in by all parties in interest, and in practical construction of the agreement to be performed under its double aspects, in furtherance of the original and sole purpose of the parties and within the reasonable scope of the agreement, that advanced Fessenden's claim to the recoverable position of corporate indebtedness. It was perfectly legitimate, under the double aspects of the agreement, to which reference has been made, for the corporation and the parties interested in the corporation, to change to that kind of corporate indebtedness, provided the parties holding the claims assented to it. According to the testimony of Mr. Fessenden, such was the fact; and, while there was a conflict of testimony upon this point, the instructions were full and complete, and the jury found for the plaintiff. The instructions upon this question were as follows:

"You have heard the evidence fully detailed, fully commented on. It is for you to draw what conclusions you think the preponderance of the evidence warrants. As to either Given or Wolcott, if you should find that, having knowledge that the company had undertaken to agree as expressed in Exhibit C, either of them said to the plaintiff that that was all right, or if after such knowledge either of them remained silent and said nothing, knowing all the time that the plaintiff was going on in reliance upon Exhibit C—that you would be at liberty to regard as evidence warranting a finding on your part that Given and Wolcott, as the case may be, had approved and accepted the contract, provided you will have found that such a contract was made. In that you will, of course, consider the conflicting evidence regarding the plaintiff's statement that something was said to him about his $300,000 being put on the books and drawing interest or as to any admission of Braun, the secretary, either by words or by looks or by silence, that it was the fact that that $300,000 or $330,000, whatever it was, had been in fact put on the company's books, and that he was led to believe that anything of the kind was true."

Under the instructions as a whole, and under the paragraph quoted, the jury must have found, not only ratification of the agreement of September 12, 1908 (Exhibit C), by all parties interested and by the corporation, but that the corporation, with the acquiescence of the parties interested, established the claims, not only of Given and Walker, but of Fessenden, upon the books of the corporation as a corporate indebtedness, with interest. Indeed, under the instructions this, in substance and effect, was made a condition of recovery; and, as the jury found for the plaintiff, and as the transaction related not only to the affairs of the corporation, but to its existence and the development of its enterprise, there is no reason for disturbing the verdict.

The primary and fundamental idea was to place the claim of Mr. Fessenden upon an equal basis with those of Given and Walker with respect to interest and the right of recovery. That idea being clear and unequivocally expressed in the agreement which was ratified, it should be established, and a remedy should be furnished for the enforcement of the right, unless, under the rule of liberal construction in its favor, which should hold in a case of this kind, it is made impossible by the terms of the agreement.

As already said, satisfaction through issuing preferred stock was only set out as the best way, and the paragraph which follows the ex-

pression as to the best way, as well as the addendum, had reference to how it should be done provided it should be accepted as the best way and adhered to by the parties. But the corporation and parties devised what seemed to them to be a better scheme. This was a thing perfectly open to them under the nonconclusiveness, and double aspects, in respect to ways and means, and it being open to them to do so they subsequently put their own practical construction upon the agreement, and devised what seemed to be a better way than that first thought of.

Under ambiguity or under double aspects, the parties are bound by their acts and sayings in respect to a practical construction of the purposes, terms, and possibilities of a contract. Thomas v. Barnes, 156 Mass. 581, 31 N. E. 683; Lovejoy v. Lovett, 124 Mass. 270; Stone v. Clark, 1 Metc. (Mass.) 378, 35 Am. Dec. 370; Choate v. Burnham, 7 Pick. (Mass.) 274, 278; Clark v. Munyan, 22 Pick. (Mass.) 410, 33 Am. Dec. 752; Frost v. Spaulding, 19 Pick. (Mass.) 445, 31 Am. Dec. 150; Cambridge v. Lexington, 17 Pick. (Mass.) 222; Waterman v. Johnson, 13 Pick. (Mass.) 261; Mann v. Dunham, 5 Gray (Mass.) 511; Howard v. Fessenden, 14 Allen (Mass.) 124; Morris v. French, 106 Mass. 326; Stevenson v. Erskine, 99 Mass. 367; Shaffer v. Sawyer, 123 Mass. 294; Company v. Perley, 46 N. H. 83, 103.

"Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the courts in giving effect to its provisions." 11 Century Digest, 755, § 753, and numerous cases cited.

"The parties are bound by the interpretation which they themselves give to the contract." Id., p. 757.

See, also, 1 Fed. Rep. Digest, 2291, § 87. These propositions are so well established that it would seem unnecessary to set out the authorities.

The instructions in this case were full and complete, and all that were necessary, in respect to the consideration for the contract, its ratification by the corporation, and as to acquiescence by all parties interested, and a right which the parties intended to establish will be overthrown, and justice will be defeated, unless the judgment and the verdict stand.

Though we are considering the rights of the parties in an action at law, where certain questions of fact were submitted to the jury under proper instructions, and where a verdict under such circumstances is ordinarily accepted as conclusive in respect to such facts, the reasoning of the majority opinion would seem to have reference more to a situation in which there had been no jury trial, or to one in which the court is at liberty to deal with all the questions involved de novo, with the result, as it seems to me, of finding facts not only as to the claim of Fessenden, but as to those of Given and Walker as well, which neither of the parties contemplated in the final adjustment of their rights under the double aspect agreement of September 12, 1908.

In the view which I take of this case it requires strained and extremely refined and technical reasoning to overthrow the verdict and judgment reached after a long and comprehensive trial.