SOUTHERN PAC. CO. v. LOWE, Collector of Internal Revenue.

(District Court, S. D. New York. January 6, 1917.)

No. 23.

1. INTERNAL REVENUE ⬥⟿38—INCOME TAX—ACTION TO RECOVER—BURDEN OF PROOF.
   In an action to recover the income tax paid by a stockholder on dividends declared by the corporation, the burden is on plaintiff to prove that the dividends were a payment from the capital, not from income.
   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⬥⟿38.]

2. INTERNAL REVENUE ⬥⟿7—INCOME TAX—DIVIDENDS ON STOCK.
   Though all the stock of a corporation was owned by another corporation which handled the money of the former and kept its accounts, the surplus earned by the former was nevertheless its property, so that a dividend declared was income of the holding corporation during the year in which it was paid under Income Tax Act Oct. 3, 1913, c. 16, 38 Stat. 173.
   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10; Dec. Dig. ⬥⟿7.]

3. INTERNAL REVENUE ⬥⟿7—INCOME TAX—"INCOME"—"GAINS"—"PROFITS."
   The "income" of a corporation taxable under Act Oct. 3, 1913, does not include the increased value of the capital as such, though such increase would be "gains" or "profits," since income does not include everything that comes in, but is limited to gains and profits so as to mean only receipts which constituted an accretion to capital.
   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10; Dec. Dig. ⬥⟿7.
   For other definitions, see Words and Phrases, First and Second Series, Gain, Income, Profit.]

4. CORPORATIONS ⬥⟿152—RIGHTS OF STOCKHOLDERS—SURPLUS—DIVIDENDS.
   The accumulation of a surplus does not in itself entitle the stockholders to dividends the granting of which is within the discretion of the directors reviewable only for fraud.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 564–567; Dec. Dig. ⬥⟿152.]

5. CORPORATIONS ⬥⟿151—RIGHTS OF STOCKHOLDERS—PROFITS.
   A stockholder has no interest in the profits of a corporation until a dividend has been declared.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 555–559; Dec. Dig. ⬥⟿151.]

6. INTERNAL REVENUE ⬥⟿7—INCOME TAX—DISTRIBUTION OF CAPITAL ASSETS.
   Corporate dividends which are merely a distribution of capital assets are not taxable as income; but where the stockholder does not show that extraordinary dividends declared were not the accumulation of earnings, but were unearned values of its capital, such dividends were taxable.
   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10, Dec. Dig. ⬥⟿7.]

At Law. Action by the Southern Pacific Company against John Z. Lowe, Jr., as United States Collector of Internal Revenue for the Second District of New York. Judgment directed for defendant.

⬥⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Gordon M. Buck, of New York City, for plaintiff.

H. Snowden Marshall, U. S. Atty., of New York City (Ben A. Matthews, Asst. U. S. Atty., of New York City, of counsel), for defendant.

MANTON, District Judge. The plaintiff has instituted this action alleging two causes of action, seeking to recover in the first $131,563.80 and in the second $183,882.64, taxes paid under the income tax law. By stipulation between the parties only the second cause of action was litigated, the first cause to await the outcome of the trial of the second.

This income tax was assessed against dividends received by the plaintiff during the first six months of 1914. During this period, the Central Pacific Railway Company, whose entire corporate stock was held by the plaintiff, paid to the plaintiff four several dividends aggregating $18,361,597.48. These dividends were paid as follows:

| | |
|---|---:|
| Jan. 10, 1914, 20% on preferred stock ......................... | $ 3,480,000.00 |
| Jan. 10, 1914, 20% on common stock.......................... | 13,455,100.00 |
| Jan. 2, 1914, special dividend distributing proceeds of sale of land at Rockaway Beach sold in December, 1913.. | 514,000.00 |
| Jan. 13, 1914, regular 6% dividend......................... | 912,497.48 |
| Making a total of.................................... | $18,361,597.48 |

This last item represents only the portion of the dividend paid on January 13, 1914, which the plaintiff claims exceeded the net earnings of the company during the period. The plaintiff is the holder of all or the large majority of stock of a number of railroad corporations, including the Central Pacific Railway Company, and forms a unified transportation system. The earnings of the companies are kept together with the plaintiff as the banker of the system. The Central Pacific Railway Company kept no bank account, but its earnings were deposited with the bank accounts of the plaintiff. If the railway company needed money during this period for additions and betterments, the necessary funds were advanced by the plaintiff. This system was in practice prior to the declaration of the four dividends in question. In fact, the plaintiff has owned the entire capital stock of the Central Pacific Railway Company ever since the latter's incorporation, and from this it is claimed by the plaintiff that it became neither richer nor poorer by the declaration and payment of these dividends. Plaintiff further claims that the dividends in question were not earned during the period of taxation, to wit, the first six months of 1914.

It also claims that the proof warrants a finding that these dividends were paid from surplus resulting from the operations of the railway company prior to July 1, 1909, and that the net credits or debits to surplus for each of the fiscal years from 1910 to 1914, inclusive, shows no such earnings from which the dividends in question might be paid. The testimony of the plaintiff's accountants, together with its books, would indicate that the claim of the plaintiff was well founded, so that it may be assumed that the two extraordinary dividends of 20 per cent. each on the preferred and common stock of the railway company, paid in January, 1914, and the extraordinary dividends of $514,-

000 likewise paid on the preferred and common stock in January, 1914, must have been paid wholly out of the surplus accruing prior to July 1, 1909, and that at least $2,313,234.20 of the 6 per cent. dividend paid on the common stock in June, 1914, must have been paid out of the surplus accruing prior to July 1, 1909.

Exhibit H shows the surplus on June 30, 1909, and the surplus at the close of each fiscal year up to and including June 30, 1914. On June 30, 1909, the railroad company had a surplus of $25,250,361. Dividends paid during the next five fiscal years, according to the plaintiff's books of account, indicate no such amount in the profit and loss account as would permit of the payment of the dividends in question. It is therefore reasoned by the plaintiff that these moneys paid in dividends must have been paid out of the surplus which accrued prior to July 1, 1909; but how this surplus is made up, whether from earnings of the company or increase in value of land, does not appear. The learned counsel for the plaintiff claims:

"It follows therefore that all three of the extraordinary dividends must have been paid from surplus, and that all of the four dividends must have been paid from surplus except $1,727,295.80; the difference between the sum last mentioned and the amount of the dividend, or $2,313,234 is the amount which must have been paid from surplus."

[1] The burden of proof was upon the plaintiff to establish a payment from the capital, not from income as dividends. This burden it has failed to sustain.

When this tax was levied, a protest was made and a hearing had before the Treasury Department, a brief was submitted in behalf of the plaintiff, and, after an adverse ruling before the department, the plaintiff, under protest, paid the tax, and now brings this action to recover the moneys so paid.

The Act of October 3, 1913 (Act Oct. 3, 1913, c. 16, § II G [a-c], 38 Stat. 172, 173 [Comp. St. 1913, §§ 6327-6329]), provides:

"G. (a) That the normal tax hereinbefore imposed upon individuals likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation. * * *

"(b) Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, * * * received within the year from all sources, (first) all * * * ordinary and necessary expenses paid within the year; * * * (second) all losses actually sustained within the year; * * * (third) the amount of interest accrued and paid within the year; * * * (fourth) all sums paid by it within the year for taxes. * * *

"(c) The tax herein imposed shall be computed upon its entire net income accrued within each preceding calendar year ending December 31st. * * * *"

The sixteenth amendment of the Constitution gave Congress the power to lay and collect taxes on income from whatever source derived, without apportionment among the several states, without regard to any census or enumeration. This has been held to be constitutional. Brushaber v. Union Pacific, 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493; Stanton v. Baltic Mining Co., 240 U. S. 103, 36 Sup. Ct. 278, 60 L. Ed. 546. The application of this statute presents two questions: First, whether the dividends in question may properly be

considered a part of the gross income of the plaintiff; and, second, whether such dividends were received within the year.

The plaintiff advances the claim that these moneys paid in dividends came from surplus earnings, and because they were surplus they were, in fact, an addition to and a part of the capital of the railway company, and that they were in no sense income.

[2] The defendant contends that they constitute income received within the year. The plaintiff says that because of the method of bookkeeping and the manner of handling the moneys of the Central Pacific Railway Company, in truth and in fact, the money was in the actual possession of the plaintiff at all times. Be this as it may, if it was money earned by the railway company's capital, because the physical possession and books of account represented it as the plaintiff's property by reason of possession, nevertheless it does not change the ownership of the property, for legally it was the property of the railway company and that company was entitled to all the rights of ownership. Therefore, when its board of directors permitted the income to accumulate into a surplus so large that at a later day it was justified in declaring special dividends, I think it was still income for the stockholders to which they could only become entitled when the dividends were declared.

[3] I do not think that "income," as used in the statute, should be given a meaning so as to include everything that comes in. The true function of the words "gains" and "profits" is to limit the meaning of the word "income" and to show its use only in the sense of receipts which constituted an accretion to capital. So the function of the word "income" should be to limit the meaning of the words "gains" and "profits." The increased value of capital as such constitutes in one sense a gain or profit, but not income. Hence such gain or profit is not taxable, but only such profits and gains as constitute income are taxable. This in substance was what the court held in Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, and in Gauley Mt. Coal Co. v. Hays, 230 Fed. 110, 144 C. C. A. 408.

In the early case of People v. Davenport, 30 Hun (N. Y.) 177, it was said that "income is that which capital earns remaining itself intact." This definition was recently adopted in Mitchell v. Doyle (D. C.) 225 Fed. 437.

While these moneys remained as surplus of the Central Pacific Railway Company, they were subject to legitimate use by order or direction of the board of directors of that company. They were part of the gains or profits of that company, and its business was the operation of a railroad. Although the plaintiff held the entire stock of this company, it gave it no right to the surplus or earnings. Indeed, they could only declare a dividend by order of the board of directors of the railway company, so that the plaintiff's right to possession of the moneys came only when a dividend was declared, to wit, within the taxing period, the first six months of 1914. If these dividends were not received on the dates they were declared and paid, then when were they received?

[4] The government cannot tax undistributed surplus as income to the stockholders because they were income to the stockholder when

paid and not before. While it may be that the plaintiff owning all of the capital stock of the Central Pacific Company could have begun some action to have disbursed the surplus, still it did not do so. The accumulation of surplus of itself does not entitle stockholders to dividends. N. Y. L. E. & W. R. Co. v. Nickals, 119 U. S. 296, 7 Sup. Ct. 209, 30 L. Ed. 363; Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525; St. John v. Erie, 22 Wall. 136, 22 L. Ed. 743; Union Pacific v. Frank, 226 Fed. 906, 141 C. C. A. 510; Park v. Grant Locomotive Works, 40 N. J. Eq. 114, 3 Atl. 162.

Indeed, the granting of dividends is entirely in the discretion of the directors, and, in the absence of fraud, their action is not subject to review by the courts. Wilson v. Amer. Ice Co. (D. C.) 206 Fed. 736; Cook on Corporations (6th Ed.) § 545.

[5] A stockholder has no interest in the profit of a corporation until a dividend has been declared. Humphreys v. McKissock, 140 U. S. 304, 11 Sup. Ct. 779, 35 L. Ed. 473; U. S. Radiator Co. v. N. Y., 208 N. Y. 144, 101 N. E. 783, 46 L. R. A. (N. S.) 585.

[6] Often receipts come in which are but a change of capital investment or which represent a distribution of capital assets. In that case, there is no gain or profit. If such receipts were regarded as income, the taxpayers' capital is depleted. Such was the reasoning in the cases of Lynch v. Hornby, 236 Fed. 661, —— C. C. A. —— and Lynch v. Turrish, 236 Fed. 653, —— C. C. A. ——, decided March, 1916, in the Circuit Court of Appeals (Eighth Circuit).

From the evidence here, from all that appears, the surplus funds upon which the dividends have been declared are not shown to be other than earnings of the railway company, or gains and profits. Counsel has argued differently in his brief, but nowhere does the testimony or statements warrant a finding that this surplus is an increase to capital by a year to year enhancement of the value of the capital of the railway company and is not from any enhancement of the value of land or property of the corporation.

In Stanton v. Baltic Mining Co., 240 U. S. 103, 36 Sup. Ct. 278, 60 L. Ed. 546, the Supreme Court held a mining company obligated to pay a tax on sales of its ore.

In the case of Edwards v. Keith, 231 Fed. 111, 145 C. C. A. 298 (Second Circuit), the plaintiff was a life insurance agent employed by an insurance company under written contract to procure applications for assurance on the lives of individuals. As compensation for his services, the insurance company was obligated to pay him a certain commission on the first premium paid by the assured when the policy was issued. It was further obligated, as the assured paid subsequent renewal premiums for a certain number of years, to pay the plaintiff a stated commission on each of such renewal premiums. It was on these renewal premiums, or rather on the commission paid thereon, that a tax was levied. Judge Lacombe said:

"If, as counsel retained for the purpose, a lawyer argues a cause for a client before the Court of Appeals in October, 1915, having received a retainer in August and his work being completed with the argument, and the cause is decided in December and his client pays him in February, 1916, we cannot see why he should not include his retainer in his income returned for 1915

and the money paid him for argument in his return for 1916, although in that year (1916) he did nothing—did not even send in a bill, having done that in December, 1915."

And further illustrating, the court said:

"If as a reward for long and faithful service an industrial corporation votes to one of its employés, who retires from active work, an annual pension, we do not see why all installments of that pension paid in each calendar year are not, under the statute, income for that year."

And further:

"It may be noted that, although fully earned by work already done, there is no certainty that the sum conditionally promised for an ensuing year will ever be paid or will accrue or come due; John Doe may die within the first year, or at its expiration may refuse to renew his policy, in which event the company is not obligated to pay its agent anything beyond the amount already paid him; the obligation to pay does not arise until John Doe actually pays his renewal premium in cash."

In the case at bar, there is no certainty when the surplus from which the dividends were paid were earned, or that such surplus would ever be distributed as dividends. Financial reverses or some other calamity might have destroyed the surplus, and the Central Pacific Company could not have distributed the earnings to the plaintiff, and the plaintiff would have no right of action against this railway company for the amount of such loss or surplus.

In Stratton's Independence v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285, the court said:

"It was reasonable that Congress should fix upon gross income, without distinction as to source, as a convenient and sufficiently accurate index of the importance of the business transacted. * * * Moreover, Congress evidently intended to adopt a measure of the tax that should be easy of ascertainment and simply and readily applied in practice."

Judge Thomas, in Conn. Mutual Life Ins Co. v. Eaton (D. C.) 218 Fed. 206, held that, under the act of 1909, taxation is limited to such income as was actually received during that year, and does not include items which may have been earned or have become due but have not been collected. This case was affirmed on appeal in this Second circuit.

In Herold v. Mutual Life Ins. Co., 201 Fed. 918, 120 C. C. A. 256, Judge Cross, in the Third district, said:

"If they do not arise from income received during the tax year, but from income received during a previous year, Congress has not taxed them * * * more than once. Concededly, they have been taxed once with the other net income of the particular year during which the company actually received them in cash."

It must be remembered that the tax here is charged upon the plaintiff which received the dividends, and not the corporation which paid them. The phraseology of the statute provides for the gross amount of the income of such corporation "received within the year from all sources" and permits of deduction of: (1) All the ordinary and necessary expenses paid within the year; (2) all losses actually sustained within the year; (3) the amount of interest accrued and paid within the year; and (4) all sums paid by it within the year for taxes.

Since these dividends were received within the six months and were paid as part of the gross income to the plaintiff as the stock-holder of the railroad company, and were received within the year "from all sources," I am of the opinion that the collector was right in levying this assessment and collecting this tax; and, accordingly, there must be judgment directed for the defendant on the second cause of action.