## SHAFFER v. McCULLOCH et al.

### STAR PUB. CO. v. SAME.

### McCULLOCH v. SHAFFER et al.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1911. Rehearing Denied October 4, 1911.)

Nos. 1,771, 1,772, 1,795.

1. CORPORATIONS (§ 156*)—STOCKHOLDERS—PREFERRED STOCKHOLDERS—RIGHTS AS CREDITORS.

A holder of preferred stock of a corporation, which under its articles of incorporation differs from the common stock only in that it is entitled to a preference in dividends to a stated per cent. and in distribution of assets and has no voting power, is a stockholder, and not a creditor, and has no greater rights than other stockholders, except as to the preferences so given him over common stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–603; Dec. Dig. § 156.*]

2. CORPORATIONS (§ 548*)—CREDITORS' SUIT—POWER TO DISMISS—RIGHTS OF STOCKHOLDER.

The fact that, on the filing of a creditors' bill against a corporation alleging insolvency and an answer admitting the allegation, the court has appointed a receiver and taken possession of the defendants' property, does not irrevocably fix its status as an insolvent whose business must be wound up and its assets distributed, but the creditors interested may, by agreement between themselves and with the corporation, dismiss the suit and restore its property. Nor does an intervening stockholder acquire any greater right in the property than he had before the suit, which entitles him to insist on its distribution regardless of the interests of the company itself or its creditors, whether it is or is not in fact insolvent.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 548.*]

---

Appeal from the Circuit Court of the United States for the District of Indiana.

Suit in equity by Daniel G. Reid against the Star Publishing Company, the Western Trust & Savings Bank, and the American Trust & Savings Bank, in which John C. Shaffer was admitted as a co-complainant and George F. McCulloch filed a cross-bill. From the decree defendant Star Publishing Company, Shaffer, and McCulloch appeal. Reversed, and cross-appeal by McCulloch dismissed.

The several appeals are from a decree entered December 1, 1910, ordering to be sold as a whole the property of the Star Publishing Company, a corporation of Indiana, including its plant, personal supplies, leasehold interests, rights, franchises, real estate, credits, accounts, claims and demands, contracts and circulation, and all other property, rights, franchises, equities, and benefits, and good will of every character, excepting only the money in the hands of the receiver or on deposit to his credit. The upset price was fixed at $1,175.000. The original bill upon which this sale was decreed was by Daniel G. Reid, a citizen of New York, against the Star Publishing Company and the Western Trust and Savings Bank and the American Trust and Savings Bank, corporations of Illinois, averring that there was overdue to Reid upon a promissory note executed in his favor by the Star Publishing Company $221,703; that the Star Publishing Company had no property subject to execution beyond the value of $91,100; that the bulk of its property was subscription lists, advertising contracts, Associated Press franchises, and good will; that there was outstanding $500.000 bonds of which the Western Trust and Savings Bank was trustee, and $150,000 bonds of which the American Trust and Savings Bank was trustee; that the company at all times had been without working capital and wholly dependent upon receipts from its current business; that its net losses to the date of filing the bill were more than $100,000, its continuance in business being due solely to the forbearance of Reid to enforce payment of his claim; that further installments of interest were coming due; that by reason of the mortgages and an outstanding issue of $500,000 of preferred stock it was impossible to obtain additional capital or to pay its debt to Reid; that the company was insolvent; that complainant could not realize anything by judgment or execution at law; that to realize the value of the property it should be sold as an entirety, the franchises and good will along with the tangible property; and praying that the court would ascertain severally the amounts due to Reid and to each of its other creditors who might intervene in the suit (the bill being brought on behalf of Reid and all other creditors joining him) and also the amount of indebtedness upon the bonds, and that thereupon the property described should be sold as an entirety free of the liens of said mortgages. The Star Publishing Company entering its appearance, admitting the averments of the bill, and consenting to the appointment of a receiver, a receiver was accordingly appointed.

October 15, 1908 (the original bill was filed April 25, 1908), George F. McCulloch, by leave of court, filed his cross-bill setting out that he was the owner of $500,000 of the preferred stock—the entire issue of preferred stock; gave the history of the organization of that company; alleged mismanagement of the company by Reid and his assistants; attacked the validity of $150,000 of the Reid note; praying the court to continue the receivership, to sell the property, and to distribute the proceeds; and that in the distribution of such proceeds he receive $500,000 ahead of the common stockholders—the articles of incorporation providing that in any application of the assets of the company to the redemption of its capital stock the preferred stock should be redeemed not to exceed par thereof, and all unpaid declared dividends, in priority to the redemption of the common stock. Dividends on the preferred stock were non-cumulative.

November 18, 1908, Reid appeared by counsel, together with the Western Trust and Savings Bank and the American Trust and Savings Bank, trustees; and moved to dismiss the bills and cross-bills, which motions were over-

ruled; the motion of McCulloch to order the receiver to pay the interest on bonds being allowed.

December 28, 1908, John C. Shaffer was admitted as a co-complainant and January 27, 1909, filed a bill in the nature of a supplemental bill, alleging that he had purchased of Reid all the securities held by Reid; averring that the Star Publishing Company was now solvent; and praying that the receiver be discharged and the property returned to the corporation, and that the bill filed by Reid and the cross-bill by McCulloch be dismissed.

To the original bill, McCulloch's cross-bill, and Shaffer's supplemental bill, answers were duly filed. And upon this state of the case, together with the Master's report containing the evidence taken in the case, the decree appealed from was entered.

The ground upon which the decree is based is summarized by counsel for McCulloch as follows (the court found the $221,703 note a valid debt):

"(a) That Reid (and the corporation) procured the court, on the sworn statements in the bill, to adjudicate the corporation insolvent;

"(b) That by the adjudication a trust fund was created, and is now being administered to a sale and distribution as prayed;

"(c) That McCulloch's certificates, are in fact, not evidence of a stock ownership, but of a debt;

"(d) That he is therefore a creditor, and on a parity with the $221,703 note, as a claimant against the fund;

"(e) That Shaffer, as co-complainant, has no other or greater rights in the case than Reid; that while his bill as a pleading, is necessarily supplemental, his essential rights, are the same as Reid's;

"(f) That neither Reid nor Shaffer will be allowed, by the court of equity (whose aid was invoked, to administer the affairs of an insolvent corporation, to a sale and distribution), to change the status occasioned by them, to the prejudice of the rights of McCulloch, which have arisen in the trust fund, by reason of the insolvency.

"(g) That the corporation was shown by the sworn bill, on which the court acted, and was adjudicated to be insolvent; that it is insolvent; that no evidence showing its solvency is in the record."

The ground stated in the decree itself is as follows:

"That said George F. McCulloch, upon his being admitted as a party to this cause, and thereupon by filing his cross-bill herein setting up his claims and rights in, to and against the assets in the possession of this court and its receiver as aforesaid, acquired rights under the said order of April 30, 1908, by reason whereof he became and now is entitled to the continuance of the receivership and the administration of the assets aforesaid until the purposes of administration have been accomplished by sale of all properties, rights, business and effects, and the distribution of the proceeds, together with the funds now in the hands of the receiver; and he may not without his consent be deprived of his rights to such complete administration by dismissal of the original bill in this cause or by a termination of the receivership and the return of the property and business to said Star Publishing Company without such administration; and the original bill in the nature of a supplemental bill filed herein by John C. Shaffer, in so far as it prays for a dismissal of the original bill and a return of the property, assets and effects to the Star Publishing Company, is now dismissed upon its merits; and said bill in the nature of a supplemental bill is allowed to stand only for the purpose of setting up and claiming the rights and claims of said John C. Shaffer as the owner of the note, bonds, and shares of common stock acquired by him as alleged in said bill."

Further facts are stated in the opinion.

Ovid B. Jameson, Charles W. Miller, Joseph H. Defrees, George T. Buckingham, Henry A. Ritter, John G. Campbell, and Marquis Eaton, for George F. McCulloch.

John Barton Payne, Silas H. Strawn, and Ralph M. Shaw, for John C. Shaffer.

·Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above). Two ·grounds are urged in argument in support of the right of the Circuit Court to proceed to a decree notwithstanding the motions of the creditors and of the trustees of the bondholders to have the proceedings dismissed: (a) that McCulloch, though on the face of the organization papers a preferred stockholder only, was in fact a creditor, and, therefore, against his consent the administration suit could not be .stopped short of a sale and distribution of the property; and (b) the Star Publishing Company being adjudged· insolvent by order of the court appointing a receiver, its assets became eo instanti a trust fund to be administered for the benefit of the stockholders as well as the creditors, and remained so, notwithstanding the motions, joined in by all the creditors, that the administration suit be lifted and the property restored.

[1] (a) The articles of incorporation divided the shares into two classes, preferred and common, the only distinction being that the preferred should have dividends out of the net earnings up to five per cent. before the common should have dividends, and that in a distribution of the assets the preferred should be redeemed at par before any portion of the common was redeemed—the common having the voting power of the corporation. There is· nothing in this that makes the status of the holder of preferred shares other than that of a stockholder. And there is nothing in the Indiana statutes, as we read them, that in any way affects the relations of the stockholders to each other, or of the preferred stockholder to the assets, other than as appears in the foregoing articles of organization. Until the assets of this corporation are distributed the preferred stockholder remains a stockholder only; and upon distribution, his right of priority remains the priority of one class of stockholders over other stockholders only—courts of equity having power, of course, by proper action to enforce this priority.

The property constituting the Star Publishing Company (three newspapers in Indiana) was originally owned by McCulloch, being conveyed by him to the Star Publishing Company in consideration of the $500,000 of preferred stock and $300,000 in cash and bonds. It was said at argument that the transaction took place upon an agreed basis of $800,000 valuation; that the issue of the preferred stock is not technically legal; and that, therefore, setting it aside as McCulloch's evidence of indebtedness, McCulloch has the right to appear in the attitude of a creditor whose original debt was $800,000. There is no pleading, however, that sets up this claim. McCulloch accepted the preferred stock and held it for a number of years. An equity such as this ought not to make its first appearance at an argument upon appeal.

[2] (b) The second ground—that upon the appointment of a receiver determining the corporation's insolvency the property became eo instanti a trust fund to be administered by the court for the benefit of stockholders as well as creditors—is the one upon which, evi-

dently, the decree was entered, for in his memorandum opinion Judge Anderson says:

"The original bill filed by Reid was a general creditor's bill brought on behalf of himself and all other creditors in like situation. Considered broadly, it is a bill asking the court to seize the property, marshal the assets, determine the debts and their priorities, sell the property and apportion the proceeds among the parties entitled thereto. As a first step in this proceeding it asked the court to appoint a receiver to take and hold the property under the orders of the court. One of the material averments of the bill as a creditor's bill, was the fact of the insolvency of the corporation, and this was the material averment upon the motion for the appointment of a receiver. This averment, among others, was admitted by the defendant in its answer, and when the complainant, Reid, moved the court to appoint a receiver upon the bill and answer, he invoked the court's action and asked the appointment of a receiver upon the admitted fact of insolvency.

"The court granted the petition and appointed the receiver upon that admitted fact, and because of it, and the order was an adjudication of the fact upon which it was based. The action of the court is not to be considered as bounded by the order alone, but it extends to every fact involved in it as a necessary step, or the ground work upon which it must have been founded. This is the rule as to all judgments and decrees. To ascertain what has been determined by a judgment or decree, the court will look back to the basis upon which it stands, 'upon the obvious principle that when a conclusion is indisputable and could only be drawn from certain circumstances, the premises are equally indisputable with the conclusion.'

"The fact of insolvency at that time was therefore judicially determined. The Supreme Court of the United States has held that 'when a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those trust funds which, under other circumstances, are as much the absolute property of the corporation as any man's property is his.' Graham v. Railroad Co., 102 U. S. 148, 161 [26 L. Ed. 106]; Wabash Ry. Co. v. Ham, 114 U. S. 587 [5 Sup. Ct. 1081, 29 L. Ed. 235].

"In Hollins v. Brierfield, 150 U. S. 371 [14 Sup. Ct. 127, 37 L. Ed. 1113], the court, after citing and quoting from Graham v. Railroad Co., supra, said:

"'When a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders rather than to the corporation itself.'

"In Blake v. McClung, 172 U. S. 239 [19 Sup. Ct. 165, 43 L. Ed. 432], the Supreme Court said:

"'It is an established rule of equity that when a corporation becomes insolvent it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors;' citing Graham v. Railroad Co., supra.

"In McDonald, receiver, v. Williams, 174 U. S. 397, on page 404 [19 Sup. Ct. 743, on page 745 (43 L. Ed. 1022)], after discussing this trust fund theory and the former cases in that court dealing with it, the court said:

"'Insolvency is a most important and material fact, not only with individuals but with corporations, and with the latter, as with the former, the mere fact of its existence may change radically and materially its rights and obligations. * * * Although no trust exists while the corporation is solvent, the fact which creates the trust is the insolvency, and when that fact is established, at that instant the trust arises.'

"As already stated, when the original bill and the answer were filed in this court and the action of the court invoked thereon by the motion to appoint the receiver, the appointment of the receiver was a judicial determination of the fact of insolvency. The insolvency of the company as averred in the bill and as admitted in the answer was the fact upon the consideration of which the court took the action invoked by the original complainant. The appointment of the receiver was the first step in the administration of the

affairs of the Star Publishing Company, as prayed for in the original bill, and when the court took this first step and through its receiver took into possession the property of the Star Publishing Company for the purpose of administering its affairs as prayed in the original bill, at that instant, under the rulings of the Supreme Court, a trust arose and the property of the corporation became in the hands of the court a trust fund for the creditors and stockholders of the corporation; and, upon objection by a stockholder or creditor—and McCulloch did object—it was the court's duty to overrule the motion of the original complainant to dismiss his bill, and hold the cause and enforce the rights which had accrued to McCulloch by the proceedings up to that date."

Assuming the court's premise—that the appointment of a receiver, under the circumstances named, vested McCulloch as a preferred stockholder with an interest in the trust fund of which nothing could divest him except his own consent—the court was right in entering the decree notwithstanding the motions of the creditors.

But does this correctly define McCulloch's relation to the so-called trust fund? Does the bringing of such a creditors' suit and the appointment of a receiver, determining for the time being that the corporation is insolvent, become a judicial determination so final that the status is not ended, except by consent of the stockholders, one and all, as well as the creditors? Is the trust fund character impressed upon the assets by the appointment of a receiver so irrevocable, that notwithstanding to proceed to finally wind up the corporation and distribute its assets would be an injury to its interests as an entirety, and notwithstanding those who initiated the movement and all who joined in it as creditors are willing that the proceedings should be recalled on terms that would do none of the interests injury, the court has no authority to do other than to go on to final distribution? Can not creditors who have thrown a going concern into chancery, a concern depending like this one upon its being a going concern, for its chief value, repent their conduct and thereupon permit it to be taken out of chancery? Upon these questions we are left without any serious doubt. They answer themselves. To answer them the way the court below has answered them would be to forbid a court of chancery from giving, at any time, a helping hand, except at the risk, which the court itself could not avoid, of making it a hand that an indignant stockholder may successfully lay hold of to blight and destroy.

There is nothing in the cases cited that establishes the view taken. None of them involve, even remotely, the question involved. What is said in each of them (as quoted) about the assets of insolvent corporations being trust funds is consistent with the power of creditors who have put a corporation into chancery to consent that it be taken out again—the terms being a matter for each individual case as it arises. Whatever uncertainty is raised by these quotations is not in the doctrine, but in the application of the doctrine. And the one expression, in all cases, that most nearly applies the doctrine to the case in hand is that of Justice Brewer in Hollins v. Brierfield Coal and Iron Company, infra, wherein, after reviewing all these cases, and stating the doctrine in general terms, he continues:

"It is rather a trust in the administration of the assets after possession by a court of equity, than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder."

That sentence seems to us to exactly express the application of the doctrine to the case before us. From the moment the bill was filed and the receiver was appointed the assets of this corporation became a trust in the "administration" of the property. That does not mean that the stockholders acquired a relation to the property they did not have before; it means that they may insist that while the administration continues the assets shall be treated as trust funds, and if distribution takes place, shall be distributed as trust funds. By the appointment of a receiver McCulloch acquired no rights upon the property he did not have before; what he acquired was that whatever equities he had should be taken care of in the administration of the property. The trust attaches to the "administration" of the property, and is raised and ceases whenever the administration of the property ceases. In other words, the bringing of a corporation into court to have its property administered for the benefit of creditors does not mean that whatever may happen respecting it subsequently, or whatever changed view the creditors may take, the corporation must be wound up and its assets finally distributed. The trust doctrine imposes no such suicidal necessity—puts in the hands of the stockholder no such weapon of destruction.

(c) The only other contention of appellees requiring our notice is, that because, by the sworn bill, the Star Publishing Company was shown to be insolvent at the time the bill was filed, and was so adjudicated, in effect, by the order appointing the receiver (there being no evidence in the record showing its solvency now) the status of the company is to be considered as continuingly insolvent; and that, even if that were not so, the company was insolvent, as a matter of fact, at the time of the entering of the decree appealed from. Neither of these grounds is sufficient to support the decree. The appointment of a receiver fixed no status upon the company as to solvency or insolvency. The receivership was auxiliary only to the real remedy prayed. And even were the company insolvent at the time of the decree the fact is immaterial, in view of the right of the creditors to control the question whether, solvent or insolvent, the property shall be kept in chancery or taken out of it.

(d) The case before us presents the peculiar situation of the men who constitute the company's creditors being also the owners of its common stock, with the preferred stock lying between in the position of a stranger—a situation full of temptation to squeeze out the stranger. And it is urged as an equity in behalf of McCulloch that under Alexander A. McCormick's management, the affairs of the corporation were purposely directed to bring about the situation upon which, later, the creditors' bill was predicated; that to eliminate McCulloch the holders of the common stock employed the indebtedness to bring about the fall that would be followed by a sale; and that this was only prevented by the receiver's successful administration of the property under the Circuit Court's direction.

There is much in the record to sustain this view. But its introduction here must not lead us to confuse the case. However just the indignation, McCulloch ought not, under the momentum of indignation, to be allowed to ride into a place that otherwise he would not occupy. His contract was for cash $300,000, and preferred stock to the extent of $500,000 non-cumulative. Clearly, in the absence of the alleged wrong attempted against him, McCulloch would not, on any showing in this record, be permitted to reform his contract with the other stockholders or increase the value of his securities. Why should he obtain a profit from the alleged wrong, even though the attempt to do the wrong was proven? Why an eye for an eye or a tooth for a tooth, in the sense that because Reid and his associates unsuccessfully attempted to obtain an advantage over him, he should be permitted now successfully to obtain an advantage over them? The alleged wrong introduces no new rights in the case, impresses the property with no new status, and leaves the property in no new relationship. The court's duty was to save him what he had, not to add anything he did not have. The court did save him; and he can depend on a court of equity doing that whenever any such instance arises.

The original order for a receiver was based partly on an obligation of the company to Reid for $150,000 which McCulloch contested on the ground that it was working capital, included in the original arrangement, though by parol, and not a claim, therefore, for which Reid was entitled to the obligation of the company. In his cross-bill McCulloch asked to have it so declared. This the Circuit Court refused, holding there was not sufficient evidence to support McCulloch's contention; from which holding McCulloch appeals.

We are not called on, in view of our reversal of the decree, and instruction to enter an order discharging the receiver and dismissing the bill, to dispose of this question—the effect of our order being to relegate the parties, on this as on the other question in the case, to where they were when the motion to discharge the receiver and dismiss the bill was erroneously overruled.

The decree appealed from in cases 1771 and 1772 is reversed at the cost of appellee, and the cross-appeal, 1795, dismissed at cost of cross-appellant, with instructions to discharge the receiver and dismiss the bill without prejudice.