## HAZEL ATLAS GLASS CO. v. VAN DYK & REEVES, Inc.

## VAN DYK v. YOUNG.

(Circuit Court of Appeals, Second Circuit. May 11, 1925.)

No. 184.

**1. Corporations ⬤⟲156—Agreement to pay cumulative dividends requires payment only out of profits.**

Corporation's agreement to pay cumulative dividends on preferred stock binds it only to pay such dividends out of profits, as otherwise agreement would be unlawful and void.

**2. Corporations ⬤⟲68—Agreement to redeem preferred stock does not bind corporation, or give it right to redeem out of its capital.**

Corporation's agreement, "subject to the laws," to redeem preferred stock on or prior to specified date, does not bind corporation, or give it any right to redeem out of its capital.

**3. Corporations ⬤⟲68—Corporation's obligation to preferred stockowner held not affected by collateral agreement between preferred and common stock owners.**

Agreement between owners of common stock and owner of preferred stock of corporation, whereby owners of common stock agreed to make good any preferred stock dividend not paid by corporation, and agreed to redeem preferred stock in accordance with agreement between corporation and stockholder, if corporation failed to do so, *held* not to affect nature of obligation of corporation under agreement with preferred stockholder.

**4. Corporations ⬤⟲565(1)—Agreement between preferred stockholder and corporation and common stockholders as guarantors of corporation held insufficient to make preferred stockholder creditor of corporation.**

Corporation's agreement to issue preferred stock to particular person, pay cumulative dividends thereon at stipulated rate, and redeem stock on or before named date, and by which stockholder agreed to place stock in possession of his attorney in fact, and not dispose of it or take it out of state, and in which common stockholders joined individually as guarantors of corporation, *held* not to create between corporation and preferred stockholder relation of debtor and creditor, nor was the additional provision that, in event of failure to perform, and foreclosure suit and sale of stock by preferred stockholder, both corporation and common stockholders would "remain liable for any deficiency" due preferred stockholder, sufficient to create such relation.

**5. Corporations ⬤⟲565(5)—Preferred stockholder's claim to status of creditor must rest on clear and not doubtful language, stockholders having burden of proof.**

Preferred stockholder's claim to status of creditor must rest on clear and not doubtful language, and one holding stock certificate, and claiming to be both a creditor and stockholder by virtue of same contract, has burden of proving such anomalous relation.

**6. Corporations ⬤⟲565(1)—As general rule, preferred stockholders entitled to guaranteed dividends are not creditors of corporation.**

As general rule, preferred stockholder, though preferred dividend is guaranteed, is not regarded as creditor of corporation, entitled as such to share with other creditors in distribution of assets.

**7. Corporations ⬤⟲156—Preferred stock dividends are cumulative, unless contrary intention appears.**

Unless contrary intention appears, dividends on preferred stock are cumulative, and arrearages in one year are payable in subsequent years, when there are sufficient profits, before dividends can be paid on common stock.

**8. Corporations ⬤⟲197—Preferred stockholder entitled to vote as common stockholders, unless voting power expressly withheld.**

Rights of preferred stockholder depend on his contract with corporation, and such stockholder is entitled to vote, same as common stockholders, unless by terms of its issue voting power is expressly withheld.

**9. Corporations ⬤⟲565(1)—Surrender of preferred stockholder's right to vote does not make him creditor.**

Surrender by preferred stockholder of the right to vote does not make him a creditor.

Appeal from the District Court of the United States for the Eastern District of New York.

Creditors' suit by the Hazel Atlas Glass Company against Van Dyk & Reeves, Inc. From an order holding Edmond Van. Dyk not a creditor of the corporation, entitled to file claim against it (299 F. 879), he appeals. Affirmed.

This cause comes here on appeal from two orders entered in the United States District Court for the Eastern District of New York. The appellant, originally a partnership formed on February 14, 1921, and composed of Edmond Van Dyk, Benjamin M. Reeves, and Marion R. Ellis, was engaged in manufacturing and dealing in food products. They became the owners of the trade-marks, names, and labels owned by Van Dyk & Reeves, including the right to use the name of "Van Dyk" and the exclusive use of the name "Van Dyk" upon labels.

The partnership was dissolved on January 26, 1922, and a corporation was formed, to which was assigned all the copartnership property and assets, and it was agreed that the value of Van Dyk's property at that time amounted to $45,000. None of the stock was issued to Van Dyk, but $45,000 of the common stock was issued to Reeves and Ellis, and such stock was deposited by them in escrow to secure a promissory note of

$45,000 made by Reeves and Ellis to Van Dyk dated January 26, 1922.

Certain disputes and differences arose between the Van Dyk Corporation and Van Dyk, Reeves, and Ellis regarding the agreement to dissolve the partnership and to form the new corporation, and on July 20, 1922, a new agreement was entered into between Van Dyk, Reeves, and Ellis, under which, of the 100,000 shares of preferred stock, there was to be issued in the name of Van Dyk $45,000 par value thereof, subject to certain conditions hereinafter stated. It was agreed that the certificate of incorporation and by-laws should be amended, so that the preferred stock should receive 10 per cent. cumulative dividends, and that it should have no voting rights, unless three dividends remained unpaid.

It was agreed that Reeves and Ellis should make good to Van Dyk the amount of dividends, if any, not paid by the corporation; that the corporation should redeem the preferred stock at par on or before January 1, 1932. It was agreed by Reeves and Ellis, if the corporation failed to redeem such preferred stock before January 1, 1932, that they would purchase the same from Van Dyk, and Van Dyk would sell to them upon demand at par. It was agreed, also, that Reeves and Ellis at any time might purchase the stock at par.

It was agreed, further, that if, at any time, the corporation failed to pay any monthly dividend upon the preferred stock, Ellis and Reeves would personally pay such dividend; that if, at any time, Reeves and Ellis failed to make good the amount of such dividend, Van Dyk could demand, upon 30 days' notice, that the corporation redeem his preferred stock at par, and, if the corporation failed to so redeem, that Reeves and Ellis must redeem. The general creditors, at the time they became creditors, knew of the agreement as to the preferred stock.

As additional collateral for the payment of the debt to Van Dyk and the redemption of the preferred stock, $43,200 of the common stock of the corporation was deposited in escrow, to be held until the preferred stock was either redeemed or purchased at par. It was agreed that, if the preferred stock was not so redeemed or purchased, the common stock should be sold under decree of the court. This contract recited the provisions of the former contract, and as of the date of the former contract assigned to the corporation all the trade-marks and trade-names and labels, whether owned by the former copartnership or by Van Dyk, including the right

to the use of the name "Van Dyk" as a part of the corporation's corporate name, and the exclusive use of the name "Van Dyk" upon labels, and again dissolved or redissolved the old corporation of Van Dyk & Reeves. The corporation agreed to issue the preferred stock as above recited, and to pay dividends on the same, and to purchase and redeem the same, with Reeves and Ellis accepting the responsibility of guarantors thereof.

In addition, the corporation imposed upon Van Dyk, with his consent, the following conditions in regard to the preferred stock: (1) That it should be left in the possession of his attorney in fact. (2) That it should not be taken out of the state of New York. (3) That he would not sell, assign, transfer, pledge, hypothecate, or in any other manner dispose of it, except by redemption, or by sale to Reeves and Ellis, or by sale under decree of the Supreme Court. (4) That each certificate so issued should have stamped thereupon that it was subject to the terms of the agreement under which it was issued. (5) The agreement especially provided that, if Van Dyk for any reason should receive more for the preferred stock than the par value thereof, to wit, if it should be sold at auction and there was a surplus, "that the surplus should be paid over to Reeves and Ellis," and that, if sold for less, the corporation or Reeves and Ellis should remain liable for any deficiency.

The court below has held that Van Dyk is not a creditor of the corporation, and entitled as such to file a claim against it; the corporation being in the hands of a receiver.

Hamilton McInnes, of New York City, for appellant.

Rosenberg & Ball, of New York City (Godfrey Goldmark and Charles S. Ascher, both of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). A receiver was appointed for the corporation in the usual creditors' suit. In due course the receiver moved the court for an order expunging a claim filed by the appellant herein on the ground that he had no provable claim against the Van Dyk corporation—being a stockholder therein and not a creditor. This is an appeal from that order, and the sole question is whether this appellant is in law a creditor of the corporation.

[1] The corporation agreed that the pre-

ferred stock should be entitled to cumulative dividends at the rate of 10 per cent. per annum, payable in equal monthly installments. Under such an agreement the corporation was legally bound to pay these dividends out of profits. If it had expressly agreed to pay them out of its capital, the agreement would have been unlawful and void.

[2] It was also agreed that the corporation, "subject to the laws in such case made and provided," should redeem the preferred stock at par on or before January 1, 1932, with the right to redeem at par any time prior thereto. This did not bind the corporation to redeem, or give to it any right to redeem, out of its capital, but only out of its assets. There was absolutely nothing in the agreement between the corporation and Van Dyk which so changed the relation of stockholder, which ordinarily exists between the holder of preferred stock and the corporation which issued it, into the relation of debtor and creditor.

[3] It is equally clear that no agreement that was made or could be made, between Van Dyk on the one side and Reeves and Ellis on the other, changed or could change the nature of the obligation which the corporation had assumed under the agreement which it and Van Dyk had made with each other. It certainly did not change the obligation of the corporation, or the rights of Van Dyk as against the corporation, that Reeves and Ellis agreed to make good to Van Dyk the amount of any dividends not paid to Van Dyk by the corporation. Neither was it affected by the fact that it was agreed that, if the corporation failed to redeem Van Dyk's stock in accordance with its agreement with him, then Reeves and Ellis agreed that they would purchase from him the stock at par plus unpaid dividends.

This brings us to a consideration of a further portion of the agreement into which these parties entered, and which was as follows:

"(6) Van Dyk agrees that the preferred stock to be issued or transferred to him hereunder shall be left by him in the possession of Howard O. Wood, his attorney in fact, and shall not be taken out of the state of New York, and he further agrees that he will not sell, assign, transfer, pledge, hypothecate, or in any other manner dispose of the said preferred stock, or any part thereof, except as herein provided; that is to say, by redemption by corporation, by sale to Reeves and Ellis, or by sale by decree of the Supreme Court of the state of New York. An appropriate notation shall be made upon Van Dyk's certificate or certificates of preferred stock to the effect that transfer thereof is subject to the terms of this agreement on file with corporation. * * *

"(9) To better secure the redemption or purchase of Van Dyk's preferred stock and the payment of the dividends thereon, or their equivalent, as hereinbefore provided, Reeves and Ellis agree to deposit as collateral common stock of corporation owned by them, of the par value of $43,200. Reeves and Ellis shall each indorse the certificates of common stock owned by him, and the same shall thereupon be placed in escrow in the joint possession of Howard O. Wood and Herbert A. Wolff, to be held by them until Van Dyk's preferred stock shall have been either redeemed or purchased at par as hereinbefore provided, and the dividends thereon shall have been declared and paid, or an equivalent amount paid as hereinbefore provided, or the said certificates of common stock shall be sold as hereinafter provided.

"If Van Dyk's preferred stock shall not be fully redeemed or purchased on or before January 1, 1932, as hereinbefore provided in paragraphs 4 and 5 hereof, Van Dyk may, after two months' notice in writing to Reeves and Ellis, foreclose the said collateral by a suit brought in the Supreme Court of the state of New York, and may, pursuant to decree in such suit, sell the same, together with so much of his preferred stock as has not been theretofore redeemed or purchased. Such decree shall in that event provide for the sale of Van Dyk's preferred stock first in order, and for the sale of the collateral or so much thereof as may be necessary next in order."

Then it was further agreed as follows:

"It is agreed by corporation, Reeves, and Ellis that, in the event of any foreclosure suit being brought as aforesaid by Van Dyk, no defense will be interposed in such suit for the purpose of delay or for any other purpose, it being the intention of the parties hereto that, by reason of the sale thus accomplished, good and undisputed title may be given to the common stock and/or to the preferred stock, and that all the parties hereto will receive full and complete protection; that the sale shall be made at auction, and that any surplus, after payment of the amount due to Van Dyk, with interest and the expenses of the suit, shall be paid over to Reeves and Ellis, and that corporation, Reeves, and Ellis shall remain liable for any deficiency.

"(10) Reeves and Ellis agree each for himself that, during the time his common stock

is held in escrow, he will not assign, sell, transfer, pledge, or in any way dispose or attempt to dispose of the same, that he will not vote said stock for the purpose of enlarging, changing, or in any way altering the capitalization of the corporation, but will vote the said stock only for the election of directors and for purposes necessary to carry on the corporate business."

[4] We can see nothing in any of these provisions which in any way alters the nature of this preferred stock and makes Van Dyk a creditor of the corporation, and not a stockholder. As he cannot be, by virtue of his ownership of the stock, both stockholder and creditor, but must be one or the other, we think he must be the former, for we cannot see any legal justification for holding that he is the corporation's creditor.

[5] One "cannot be both creditor, and debtor, by virtue of his ownership of stock." Warren v. King, 108 U. S. 389, 399, 2 S. Ct. 789, 798, 27 L. Ed. 769. He is either the one or the other; and if it is claimed that one who holds "preferred" stock is not a stockholder, but is instead a creditor, the claim must "rest on clear and not doubtful language." Warren v. King, supra, page 398, 2 S. Ct. 797. One who holds a certificate of stock, and claims to be both a creditor and stockholder by virtue of the same contract, has the burden of proving that such an anomalous relation exists. Taft v. Hartford, Providence & Fishkill Railroad Co., 8 R. I. 310, 333, 5 Am. Rep. 575.

It is admitted that, at the time the corporation was organized, it received from Van Dyk property at the agreed value of $45,000. It is admitted that the corporation issued to Van Dyk preferred stock having a par value of $45,000, and that this stock was entitled to cumulative dividends at the rate of 10 per cent. per annum, payable in equal monthly installments. It is admitted that it was agreed that, if the corporation at any time failed to declare and pay any monthly dividend upon the preferred stock, Reeves and Ellis would personally pay to Van Dyk the amount of the dividend, and that Van Dyk would thereupon assign and transfer to Reeves and Ellis his right, title, and interest in the dividend so passed. Under the agreement the preferred stock was to have no voting rights unless three dividends remained unpaid, in which event the preferred stock was to have equal voting rights with the common stock until such time as all dividends on the preferred stock were paid; and this was subject to the further agreement that, if Reeves and Ellis made good to Van Dyk the amount of dividends not paid by the corporation, Van Dyk, Reeves and Ellis waived any right to vote on the preferred stock.

In Cook on Corporations (7th Ed.) vol. 1, § 271, that distinguished commentator remarks: "Formerly it was a matter of doubt and discussion whether or not a preferred stockholder had any rights as a creditor of the company, or was confined to his rights as a stockholder. The law is now clearly settled that a preferred stockholder is not a corporate creditor."

[6] The general rule is that a holder of preferred stock, even though the preferred dividend is guaranteed, is not regarded as a creditor of the corporation, and entitled as such to share with the other creditors in the distribution of the assets. He is, like the holders of the common stock, merely a stockholder, but with this difference, that he is entitled to priority of payment out of the assets which remain after all debts are paid; the holders of the common stock sharing in such assets as are left. See St. John v. Erie Railway Co., 22 Wall. 136, 22 L. Ed. 743; Warren v. King, 108 U. S. 389, 398, 400, 2 S. Ct. 789, 27 L. Ed. 769; Armstrong v. Union Trust & Savings Bank (D. C.) 248 F. 268; National Electric Signaling Co. v. Fessenden, 207 F. 915, 125 C. C. A. 363; Spencer v. Smith, 201 F. 647, 120 C. C. A. 75; Shaffer v. McCulloch, 192 F. 801, 113 C. C. A. 535; Field v. Lamson, 162 Mass. 388, 38 N. E. 1126, 27 L. R. A. 136; Belfast & Moosehead Lake Railroad Co. v. City of Belfast, 77 Me. 445, 1 A. 362.

In Taft v. Hartford, Providence & Fishkill Railroad Co., 8 R. I. 310, the corporation was by its charter to issue "a preferred and guaranteed stock, entitling the holder to preferred and guaranteed dividends equal to 10 per cent. per annum, payable semiannually." It issued stock certificates, which stated that the holder was entitled to preferred and guaranteed dividends at the rate of 10 per cent. per annum, payable semiannually, before any dividend shall be paid on any other stock in said company." This was held not to create the relation of creditor and debtor, and that it meant nothing more than a pledge of the funds legally applicable to the purposes of a dividend, and that it was not a preferred and guaranteed debt. The court cited no American case, and said it knew of none which was applicable, but relied upon the following English authorities: Henry v. Great Northern Railway Company, 3 Jurist, pt. 1, p. 1133; Crawford v. Northeastern Railway Company, 3

Jurist (N. S.) pt. 1, p. 1093; Matthews v. Great Northern Railway Company, Id., pt. 1, p. 284.

[7] In the instant case the agreement between the corporation, and the holder of the stock certificate provided that the holder of such stock should be entitled to "cumulative dividends." But this agreement that dividends should be "cumulative" has no bearing on the question now before us. For in any case unless a contrary intention appears, dividends on preferred stock are cumulative, and arrearages in one year are payable in subsequent years, when there are sufficient profits, before dividends can be paid on the common stock.

In Cook on Corporations (7th Ed.) vol. 1, p. 796, § 273, it is said:

· "If preferred stock is issued, without any mention of whether the dividends are cumulative, then the' law makes them cumulative. As soon as there are net profits available for dividends, the corporation must pay the preferred dividends and all arrears thereon before a dividend is declared. on the common stock. This is the well-settled rule at common law in this country and in England, and is not only equitable, but is in accord with the understanding of the business community." Henry v. Great Northern Ry. Co., De G. & J. 606; Boardman v. Lake Shore & Michigan Southern Ry. Co., 84 N. Y. 157; Jermain v. Lake Shore & Michigan Southern Ry. Co., 91 N. Y. 483; Lockhart v. Van Alstyne, 31 Mich. 76, 18 Am. Rep. 156; Hazeltine v. Belfast & Moosehead Lake R. Co., 79 Me. 411, 10 A. 328, 1 Am. St. Rep. 330.

It is, however, sometimes a question of doubt whether the holders of what is called preferred stock are stockholders in fact, or whether they are creditors. Whether they are the one or the other does not so much depend on what they are called, as on the interpretation and legal effect of the language made use of in the contract between the corporation and the holders of the stock certificates.

In 14 C. J. 417, it is correctly stated that "if by the terms of their contract they are deprived of the rights and exempted from the liabilities of stockholders, and are expressly given the rights of creditors, by being secured or otherwise, the transaction is generally to be construed as a loan or contract to pay money, and the certificate holders are creditors and not stockholders."

In Hamlin v. Toledo, St. Louis & Kansas City R. Co., 78 F. 664, 24 C. C. A. 271, 36 L. R. A. 826, the holders of securities of an insolvent railroad company, upon its reorganization and the formation of a new company, received the preferred stock of the latter, the certificates of which recited that the holders were entitled to the specified number of shares of the preferred nonvoting capital stock of the company, that the stock constituted a lien on the property and net earnings of the company next after the first mortgage bonds, that after the date specified the stock would carry "interest" at 4 per cent., which was payable only out of the "net earnings," and that the company would create no lien on its road, other than the first. mortgage, except subject to the lien of the certificates, without the consent of the holders of two-thirds of the preferred stock. The Circuit Court of Appeals for the Sixth Circuit, in an opinion written by Judge Lurton (later Mr. Justice Lurton) and concurred in by Judge Taft (now Chief Justice Taft), held that the holders of the certificates were not creditors but stockholders. They repudiated the suggestion that these certificates constituted a valid equitable mortgage, binding upon the corporation and upon all creditors who became such with notice of the equitable lien; and it was held that the so-called "interest," being noncumulative and payable only out of earnings, was. not "interest" at all, but dividends, and the owner of such a certificate was not a creditor, but a stockholder. In the instant case the agreement was not, as in the Hamlin Case, to pay "interest" at a specified rate and from a specified time, but was to pay "dividends," and the holder of the certificates was not given a lien. It is much clearer in this case than it was in that that the holder of the certificates was a stockholder and not, a creditor.

In Mercantile Trust Co. v. Baltimore & Ohio Railroad Co. (C. C.) 82 F. 360, the Johns Hopkins University filed a petition to determine the status of the preferred stock of the railroad company issued to the state of Maryland. The act, which authorized the state to subscribe for the stock, provided that. before the state should subscribe the stockholders should guarantee to the state the payment after three years "out of the profits of the work" of 6 per cent. per annum on the amount subscribed, until such time as the clear annual profits of the road were sufficient to enable it to pay a dividend of 6. per cent. on all its stock, after which the state should be entitled to a perpetual dividend of 6 per cent., and no more. It was held that, the interest and dividends of the state being payable from "profits," it did not.

become a creditor of the company, but a preferred stockholder, and that it had no equitable lien on the property of the company, which entitled it to dividends from the earnings of the road in the hands of receivers, in preference to the payment of interest on mortgage indebtedness subsequently contracted. In the instant case there never was any express agreement as to the fund out of which the corporation was to pay the dividends, and it must be assumed that the understanding was that they were to be paid by the corporation only out of profits.

In Ellsworth v. Lyons, 181 F. 55, 104 C. C. A. 1, a corporation had issued $20,000 of preferred stock. It was all subscribed for by Charles Broas, the secretary of the company, who had charge of floating it. The company's by-laws provided that the preferred stock should be retired in full at par on a specified date. They also stated that, "for the purpose of providing a fund for the redemption and retirement of said preferred stock, there has been placed upon the life of Charles Broas, secretary, treasurer, and general manager, twenty thousand dollars ($20,000) of life insurance in the Mutual Benefit Insurance Company, of Newark, New Jersey. Said insurance is taken on the ten-year endowment plan and the full amount is payable directly to this company on the death of the insured, or at the expiration of 10 years, should the insured be then living."

"Sec. 3. After providing for the payment of dividends on the preferred stock, and before any dividends shall be declared or paid upon the common stock, there shall be set aside from the net earnings of the business of the company each year and paid to the Mutual Benefit Insurance Company, of Newark, N. J., at the time when such premium becomes due, a sum sufficient to pay such premiums, less the dividend paid on such policy. The moneys received ($20,000) by this company at the expiration of the endowment period, or by the death of the insured, shall be used for no other purpose whatsoever than the retirement of the preferred stock; it being specially provided that in case of the death of the insured the moneys due ($20,000) shall be used only for the purchase of preferred stock at par."

The holders of the preferred stock purchased it in reliance upon the security as provided in the by-laws. In August, 1906, proceedings in bankruptcy were instituted against the company; and in November of that year the trustee in bankruptcy surrendered the policy to the insurance company

8 F.(2d)—46

and received therefor $2,310.71 as its surrender value. The referee found that there was no evidence that any credit was extended by any creditor of the company upon the supposition that the life insurance policy was an asset of the corporation for the payment of its debts. He also found that the company was solvent when the premiums were paid. The question was whether the holders of the preferred stock were entitled to be paid out of the proceeds received from the insurance company. It was admitted that the by-laws and the stock certificates were intended to create the preference claimed. But the court held that the company was without power to give such a preference, as a contract between the company and a stockholder by which he was to receive any part of his stock before the payment of all corporate debts was contrary to public policy and void. The court repudiated the idea that the holders of the preferred stock were in reality creditors and not stockholders, and the provision in the by-laws was held to be without statutory authority.

In Spencer v. Smith, 201 F. 647, 120 C. C. A. 75, one Thompson conveyed to a corporation property worth according to undisputed testimony $3,000,000, under an agreement that the company would transfer to him the entire amount of unsubscribed capital stock both preferred and common, except 7 shares, which had been issued to the directors. The agreement also provided that the corporation should execute a first mortgage lien upon the property to be conveyed to it to secure the preferred stock. The agreement was entered into after its approval at stockholders' and directors' meetings. It reserved to the corporation the right to redeem the preferred stock after a specified date, and bound it to redeem before a later date. The Circuit Court of Appeals for the Eighth Circuit in a unanimous opinion held that the holders of the preferred stock were stockholders and not creditors of the corporation.

And in Keith v. Kilmer, 261 F. 733, 9 A. L. R. 1287, the Circuit Court of Appeals for the First Circuit had before it an executory agreement made between the corporation and a stockholder to redeem or purchase his stock. That court, Judge Anderson writing for the court, unanimously held that this contract could not be made the basis of a claim against the corporation's estate in bankruptcy. In other words, the agreement to redeem did not convert the holder of the stock into a creditor entitling him to share in competition with other creditors in the

assets of the bankrupt corporation. This decision followed the decision in the House of Lords in Trevor v. Whitworth, L. R. 12 App. Cas. 409. In that case the House of Lords unanimously held that a limited company incorporated under the Joint Stock Companies Acts had no power to purchase its own shares, although its articles of incorporation authorized the company to purchase its own shares. And see the decision of this court in Re Fechheimer Fishel Co., 212 F. 357, 129 C. C. A. 33.

In People v. St. Louis, Alton & Terre Haute R. R. Co., 176 Ill. 512, 52 N. E. 292, 35 L. R. A. 656, the question was whether a mandamus should issue to compel a railroad company to run an additional passenger train; the company contending that the company's earnings did not warrant its running of such extra train. In estimating the liabilities and indebtedness of the road, the company had included indebtedness in the nature of preferred stock. The court said as to that: "This is manifestly improper, because guaranteed or preferred stock is but a dividend, and not a debt, and the holder of a certificate for such stock can have no action against the company as for a debt, but his right is to a dividend."

[8, 9] The rights which the holder of preferred stock has depend upon his contract with the corporation. The rule is that preferred stockholders are entitled to vote the same as the common stockholders, unless by the terms of its issue the voting power has been expressly withheld. But the fact that Van Dyk, as the holder of the preferred stock, was to have no right to vote it, except in the event that three dividends should remain unpaid, and thereupon should have equal voting rights with the holders of the common stock until all dividends on the preferred stock were paid, is a matter of no consequence, so far as the legal question herein involved is concerned. It does not change Van Dyk's status from that of a preferred stockholder into that of a creditor. Shaffer v. McCulloch, 192 F. 801, 804, 113 C. C. A. 535. The surrender by a preferred stockholder of the right to vote does not make him a creditor. Hamlin v. Toledo, St. Louis & Kansas City R. Co., 78 F. 664, 671, 24 C. C. A. 271, 36 L. R. A. 826.

In Miller v. Ratterman, 47 Ohio St. 141, 158, 24 N. E. 496, 500, the corporation undertook to guarantee the payment of dividends, but the court held that this did not constitute evidence of indebtedness. The court said:

"Nor did the stipulation guaranteeing to the holders of the preferred stock payment of dividends thereon negative the idea that they were stockholders. It was not a stipulation to pay dividends in any event, but a stipulation to pay only out of surplus profits, for the company must be presumed to have proceeded in view of the terms of the second section of the act referred to, and the general rule of law on the subject. That rule is that payment of dividends to preferred stockholders differs from such payment to the holders of common stock only in that they are entitled to dividends in priority to any dividends upon the common stock. Dividends to either are to come from one common source, to wit, from funds properly applicable to the payment of dividends; that is to say, net earnings. In the nature of things this must be so."

But in the instant case the corporation did not guarantee the dividends. The guaranty was on the part of Reeves and Ellis, who agreed with Van Dyk that they would "make good" to him the amount of dividends not paid to him by the corporation. In Machen on Corporations, vol. 1, § 541, it is stated that preferred shareholders are members of the company, and not creditors, and the author goes on in section 542 to point out some of the circumstances which are insufficient to confer on such shareholders the rights of creditors. He says, among other things:

"Nor is the fact that the preferred stockholders do not possess the right of voting at shareholders' meetings sufficient evidence that they should be deemed creditors rather than members of the corporation. Indeed, even if payment of the preferred dividend is guaranteed by the company, the preferred shareholders are entitled to nothing except out of net profits; the guaranty will be construed to apply only to payment out of any funds legally available for dividends. And, of course, a guaranty by another corporation of the punctual payment of the preferred dividend would not affect in any way the nature of the preferred shareholders' position. Even an agreement on the company's part to create no mortgage, 'except expressly subject to the prior lien' of the preferred shareholders, will not make the preferred shareholders creditors. A so-called mortgage or deed of trust of the company's property to secure the payment of preferential dividends, even when containing provisions for foreclosure or entry by the trustee in case of default, will be construed as a mere agreement between shareholders, and not as evincing an

intention that the 'preferred stockholders' should be deemed to be creditors."

Sullivan v. Portland & Kennebec R. Co., 94 U. S. 807, 24 L. Ed. 324, has been very generally understood as founded on the principle that preferred shareholders cannot by any agreement with the company entitle themselves to the rank of creditors. Under the circumstances of that case the preferred shareholders were held not entitled to the rights of creditors, and therefore not entitled to priority over a mortgage, which was a junior charge, to certificates of indebtedness issued to the preferred shareholders on a part of the company's line.

There are some cases in which the holders of preferred stock have been recognized as having certain rights which belong to creditors. These cases have rested upon exceptional statutes conferring upon the holders of the stock rights which belong to creditors, and which would not be possessed by the holders of the stock, were it not for the statutory authorization. Thus a statute in Maryland authorized the issue of preferred stock and gave to the holders priority over subsequent mortgages. Heller v. Marine Bank, 89 Md. 602, 43 A. 800, 45 L. R. A. 438, 72 Am. St. Rep. 212; Rogers v. Citizens' National Bank, 93 Md. 613, 49 A. 843. And in some cases statutes have authorized the issue of preferred stock upon which dividends were payable without regard to whether profits had been earned. Williams v. Parker, 136 Mass. 204. A statute of Ohio authorized the issue of preferred stock, to be redeemed by the company at a fixed time, the dividends to be guaranteed by the company; the payment of the principal and interest or "dividends" being secured by a bond and mortgage. The Supreme Court of Ohio, because of this statute, held that a holder of the preferred stock was a mortgage creditor.

In the agreement of July 20, 1922, it was expressly provided that the copartners sold, assigned, and transferred to the corporation all their right, title, and interest in the assets of the copartnership of Van Dyk & Reeves; and it was further provided that the corporation accepted and assumed as of the date of its incorporation all contracts, obligations, liabilities, and undertakings of every description of the former copartnership, "not including, however, any obligations of the copartnership to any of the copartners, nor the obligations of the copartners to each other." At the time that agreement was signed there was a note for $45,000, dated January 26, 1922, which had been given by two of the partners, Reeves and Ellis, to their copartner Van Dyk. That note, being an obligation of the copartners to one of the copartners, was exempted under the terms of the agreement of July 20, 1922, from the obligations which the corporation assumed. That obligation continued to be the obligation of Reeves and Ellis, who remained, as before, debtors to Van Dyk, who was their creditor, and not the creditor of the corporation. If the corporation subsequently became a debtor to Van Dyk, it must be because of obligations which the corporation assumed towards Van Dyk in the issuance to him of the preferred stock, and which made him, not a stockholder, but a creditor. In what has previously been said we have set forth our reasons for thinking that there is nothing in the contract between the corporation and Van Dyk which takes this case out of the general rule that one who holds preferred stock is a stockholder, and not a creditor of the corporation.

There is another matter in the agreement of July 20, 1922, to which we shall now refer. The agreement, as we have seen, provided that in case the corporation did not redeem the stock issued to Van Dyk, or if Reeves and Ellis failed to purchase it, or if the corporation failed to declare dividends on the stock, or if Reeves and Ellis failed to make good to Van Dyk the amount of such dividends, Van Dyk should have the right to bring a foreclosure suit and sell the stock, and that any surplus remaining after payment of the amount due to Van Dyk, with interest and the expenses of the suit, should be paid over to Reeves and Ellis. It added that "Corporation Reeves and Ellis shall remain liable for any deficiency." This in our opinion is not to be so construed as to change the whole nature of this transaction. We have already pointed out that the agreement which the corporation made to redeem the stock and to pay dividends at 10 per cent. per annum in equal monthly installments did not change the relation of Van Dyk to the corporation from that of a stockholder into that of a creditor, and that all that was meant was that redemption and dividend payments were to be made only out of surplus. It could not lawfully have agreed to redeem or to pay dividends out of capital. The same construction must be placed upon this agreement to be liable for a deficiency resulting from the foreclosure sale. It must be understood that this liability for any deficiency is limited to the liability originally assumed by it. We have seen that that liability did not extend beyond redeeming from its surplus and paying dividends from its surplus.

It is not to be understood as a promise to guarantee to pay out of its capital the obligations assumed by Reeves and Ellis.

Order affirmed.